Kathy APPLEWHITE, Administrator of the Estate of Mark C. Applewhite, Plaintiff–Appellant,

v.

METRO AVIATION, INC., et al., Defendants,

Alabama Power Company, Defendant–Appellee.

No. 88–4885
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 16, 1989.

Michael S. Allred, Satterfield & Allred, Jackson, Miss., for plaintiff-appellant.

Natie P. Caraway, Robert P. Wise, Jackson, Miss., for defendant-appellee.

Before POLITZ, JOHNSON and JOLLY, Circuit Judges.

PER CURIAM:

The question in this case is whether a Mississippi district court properly dismissed for lack of personal jurisdiction, a lawsuit against Alabama Power Company arising out of a helicopter accident that occurred completely within the State of Alabama, on the grounds that Alabama Power had not purposefully availed itself of the benefits and protections of the laws of Mississippi and so had not subjected itself to *in personam* jurisdiction in Mississippi. The plaintiff's complaint alleges that Alabama Powers' negligent maintenance of its intrastate power lines was a proximate cause of plaintiff's decedent's death, which resulted after a helicopter in which he was travelling, owned by Metro Aviation, Inc. of Louisiana, struck one of Alabama Powers' power lines crossing the Black Warrior River near Peterson, Alabama.

In reviewing the district court opinion, we are convinced that the court fully addressed each of the points Applewhite raises on appeal. We find ourselves in agreement with the district court's analysis, and, in short, do not believe that we are able to improve on what the district court said. As to Applewhite's specific contentions that the district court minimized the extent of Alabama Powers' contacts within the State of Mississippi, and failed to assign proper weight to those contacts as a whole, we find this not to be the case. We therefore affirm on the basis of the district court opinion which is attached hereto.

AFFIRMED.

1. Plaintiff's decedent was a resident of Mississippi. Defendant Alabama Power Company is

APPENDIX A

Kathy Applewhite, Plaintiff,

v.

Metro Aviation, Inc. and Alabama Power Company, Defendants.

Civ. A. No. J88–0107(L).

United States District Court,

Southern District of Mississippi,

Jackson Division.

MEMORANDUM OPINION
AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Alabama Power Company to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiff Kathy Applewhite timely responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties.

Kathy Applewhite brought this wrongful death action following the death of her husband, Mark C. Applewhite, who was killed on June 2, 1986 when a helicopter in which he was a passenger, en route from Tuscaloosa, Alabama to Jackson, Mississippi, crashed into the Black Warrior River near Peterson, Alabama. According to the complaint, the helicopter was owned by defendant Metro Aviation, Inc. and crashed when it struck one of Alabama Power Company's power lines which crossed the Black Warrior River. Plaintiff's complaint charges that the failure of Alabama Power Company to properly control and maintain its power lines across the Black Warrior River proximately caused the death of Mark C. Applewhite.

In this diversity action,[1] defendant Alabama Power contends that it is not subject to the jurisdiction of this court as it is not qualified to do business, has not done

an Alabama corporation and defendant Metro Aviation is a Louisiana corporation.

and is not doing any business in Mississippi and has no contacts with Mississippi which would support this court's exercise of *in personam* jurisdiction over it. It is well settled that in a diversity action, a federal district court may exercise jurisdiction over a nonresident only to the extent that a court of the state could properly exercise jurisdiction. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985); *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir.1983). Moreover, when challenge is made to the propriety of the court's exercise of jurisdiction, the burden is on the plaintiff to establish that jurisdiction is proper under applicable law. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985).

■ In its initial filing, Alabama Power urged that it is not amenable to service of process under the terms of Mississippi's long-arm statute, Miss.Code Ann. § 13–3–57 (1972 & Supp.1988), and further that it is not subject to the court's jurisdiction since it is not doing business in Mississippi and because there is no direct nexus between plaintiff's cause of action and any business which Alabama Power may be doing in this state. However, Alabama Power now concedes that it was properly served, not pursuant to the long-arm statute, but pursuant to the service by mail provisions of Federal Rule of Civil Procedure 4(c)(2)(C)(ii).[2] Since proper service of process is not synonymous with amenability to an assertion of personal jurisdiction, the fact that service was effected does not resolve the jurisdictional issue raised by Alabama Power. *See Omni Capital Int'l v. Rudolph Wolff & Co., Ltd.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) (amenability to service of process is prerequisite to court's exercise of personal jurisdiction).

The question remains, therefore, whether plaintiff has demonstrated a sufficient basis for this court's exercise of personal jurisdiction over Alabama Power.

■ In order for a nonresident corporation to be subject to personal jurisdiction under the Mississippi long-arm statute, three requirements must be satisfied: it must purposefully do some act or consummate some transaction in the forum state; the cause of action must arise from, or be connected with, such acts or transactions; and the requirements of due process must be satisfied. *Collins v. Truck Equipment Sales, Inc.*, 231 So.2d 187 (Miss.1970); *Thompson v. Chrysler Motors Corp.*, 755 F.2d at 1166 n. 3 (5th Cir.1985) (citing *Mladinich v. Kohn*, 250 Miss. 138, 164 So.2d 785 (1964)). Although plaintiff has attempted to demonstrate that Alabama Power is, in fact, doing substantial and continuous business in Mississippi for purposes of long-arm jurisdiction, one critical element is missing. Plaintiff, in the court's view, has not and cannot demonstrate that her cause of action arises from or is in any way connected with any conceivable business done by Alabama Power in the forum state. The alleged contacts which Alabama Power is said to have with the State of Mississippi, contacts which will be discussed in more detail, *infra*, concern the company's involvement in the operation of a coordinated and integrated power supply system spanning several states, including Mississippi. In contrast, the helicopter accident giving rise to plaintiff's cause of action occurred within the State of Alabama and involved a power line which is not a transmission line used in the interstate exchange of electricity but rather is solely an intrastate service line bearing electricity only between points within Alabama. Thus, the nexus that the long-arm statute would require between

2. The rule provides that a summons and complaint may be served upon a domestic or foreign corporation

by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of the notice and acknowledgement conforming substantially to Form 18–A and a return envelope, postage prepaid, addressed to the sender.

Fed.R.Civ.Proc. 4(c)(2)(C)(ii). In 1985, the Mississippi Supreme Court adopted a provision for service substantially similar to this federal rule. However, the rule affects only service of process and does not "expand or limit the jurisdiction of the courts of Mississippi." *See* Miss.R.Civ.Proc. 82(a) (rules not to be construed to extend or limit jurisdiction of Mississippi courts).

plaintiff's cause of action and any act or transaction of Alabama Power in Mississippi is lacking. It follows, therefore, that the long-arm statute cannot permit assertion of personal jurisdiction over Alabama Power in this court.

However, the long-arm statute does not provide the sole avenue by which jurisdiction may be obtained over a nonresident defendant. Mississippi's attachment statutes, Miss.Code Ann. § 11–31–1 to –11, provide a means for obtaining jurisdiction in addition to that provided in the long-arm statute. *See Estate of Portnoy v. Cessna Aircraft Co.*, 603 F.Supp. 285, 291 (S.D. Miss.1985); *see also* Fed.R.Civ.Proc. 64 (remedies provided under law of state for seizure of property, including remedy of attachment, made available in district court). After defendant's motion to dismiss was filed, plaintiff, claiming that Mississippi Power Company and Southern Company Services, Inc. owed debts to Alabama Power, filed an amended complaint naming those companies as attachment defendants. An order of attachment was issued by the United States Magistrate against the debts which were alleged to be owed. While the attachment statute, unlike the long-arm statute, does not require any nexus or "causal connexity" between a plaintiff's cause of action and the defendant's property or contacts within the state, employment of the attachment procedures provided by statute to obtain jurisdiction over a nonresident defendant does not excuse the requirement that the exertion of jurisdiction comport with the requirements of the due process clause. *Estate of Portnoy*, 603 F.Supp. at 292; *Administrators of the Tulane Education Fund v. Cooley*, 462 So.2d 696, 702–03 (Miss.1985). Thus, regardless of the method of service of process utilized or regardless of whether the action is instituted *in personam, quasi in rem* or otherwise, all exercises of jurisdiction must be measured by the terms of the due process clause of the United States Constitution. *See Schaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Accordingly, the court must be satisfied that the defendant has the requisite minimum contacts to subject it to the jurisdiction of the court.

The determination of whether constitutional due process requirements have been met when a state exerts personal jurisdiction over a nonresident involves a two-pronged inquiry: "(a) the nonresident must have some minimum contact with the forum which results from an affirmative act on his part; and (b) it must be fair and reasonable to require the nonresident to defend the suit in the forum state." *Stuart v. Spademan*, 772 F.2d at 1189; *see also Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1028 (5th Cir.1983). Inquiry under the first prong is intended to reveal whether the defendant's actions constitute a "purpose availment" of the benefits and protections of the forum state. In this regard, consideration is given to the "quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protections of the laws of the forum state afforded the respective parties, and the basic equities of the situation." *Thompson v. Chrysler Motors*, 755 F.2d at 1166 n. 3. (5th Cir.1985) (citing *Mladinich*, 164 So.2d 785). Each of these factors is to be weighed in considering the existence of personal jurisdiction, but the presence of any one particular factor is not an absolute prerequisite to the determination that jurisdiction exists. *Estate of Portnoy*, 603 F.Supp. at 285. In a case such as this where plaintiff's cause of action is unrelated to the nonresident's alleged contacts with the forum state, the defendant's contacts must be substantial, continuous and systematic.[3] According to plaintiff,

**3.** Under a "specific jurisdiction" inquiry, applicable where the state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contact with the forum state, a single or limited conduct will justify the exercise of *in personam* jurisdiction. *See Thompson*, 755 F.2d at 1170 (quoting *Helicopte-* *ros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 412, 104 S.Ct. 1868, 1871, 80 L.Ed.2d 404 (1984)). When a claim involves an exercise of "general jurisdiction," that being where the cause of action does not arise out of the defendant's contacts with the forum, the defendant's contacts with the forum state must be so "sys-

Alabama Power's activities within the State of Mississippi meet those criteria.

█ The facts demonstrate that Alabama Power is part of a public utility holding company system; Alabama Power and its affiliates, Mississippi Power Company, Georgia Power Company and Gulf Power Company, are each "operating companies" whose common stock is owned by The Southern Company, a public utility holding company organized and operating pursuant to the provisions of the Public Utility Holding Company Act of 1935, 15 U.S.C. §§ 79—79z–6 (1981 & Supp.1988). The Southern Company and the operating companies function under an Intercompany Interchange Contract pursuant to which the operating companies are conducted as an integrated power supply system with interconnected transmission facilities. Each company exists as a public utility "in its respective service area and has the responsibility to the members of the public within its respective service area" relative to the construction, operation and maintenance of facilities and the distribution of electric power to meet the requirements of the customers in its service area. The integrated and coordinated operation of the system is intended to allow each of the affiliate companies and their respective customers substantial economic benefits. That is, the system is designed so that each of the operating companies may operate as economically as possible for the benefit of its customers.

The Intercompany Interchange Contract provides for the exchange of electric power among the several operating companies. For example, should one of the operating companies be unable to supply sufficient power to its customers due to a shortage of power generated, another of the operating companies experiencing a surplus may sell, on a wholesale basis, its surplus power to the company experiencing the shortage.

For this purpose, Alabama Power generating facilities are interconnected with transmission lines which deliver electricity into Mississippi for purchase by Mississippi Power Company. According to plaintiff, through these interconnections, power generated by Alabama Power flows to Mississippi Power Company on a regular basis for use by Mississippi residents.[4] For the last ten to twenty years, Alabama Power has bought and sold electricity on a regular and continuous basis through its interconnections with Mississippi Power. For example, in 1986, Alabama Power delivered to Mississippi Power 567,550,000 kilowatt hours of power and Alabama Power, the same year, received from Mississippi Power 367,885,000 kilowatt hours; thus, in that year, Alabama Power delivered a net amount of approximately 200 million kilowatt hours of electricity to Mississippi Power.

Plaintiff further asserts that Alabama Power conducts business in the State of Mississippi through its agent, Southern Companies Services, Inc., an Alabama corporation which is qualified to do and is doing business in Mississippi. Southern Companies Services was established to provide, not only to Alabama Power but to each of the operating companies, general engineering, design engineering, purchasing, accounting and statistical, finance and treasury, tax, insurance and pension, rate, budgeting, business promotion and public relations, employee relations, systems and procedures, and general executive and advisory services as well as various other services with respect to the business and operations of the operating companies. Billings among the affiliated companies are handled by Southern Companies Services.

In addition, pursuant to certain "interconnection agreements," Alabama Power sells electricity to nonassociated utilities in the State of Mississippi,[5] specifically Tennessee Valley Authority (TVA) and Missis-

---

tematic and continuous" as to reasonably support an exercise of *in personam* jurisdiction. *Id.*

**4.** There are seven such interconnection points with Mississippi Power within the borders of Mississippi.

**5.** Nonassociated utilities are utilities which are not members of or that are not owned by The Southern Company.

sippi Power & Light Company (MP & L). As to each such purchase, the electricity is transferred at interconnections located within Mississippi. Under the MP & L agreement, the operating companies of The Southern Company are obligated to maintain the interconnection facilities in working order. Also, in regard to the MP & L contract, Southern Companies Services joined in the execution as agent for the operating companies, jointly and severally, and is obligated to make settlements of all electricity purchases and sales between MP & L and the operating companies.

To perform their obligations under the Intercompany Interchange Contract, the operating companies established an operating committee comprised of a representative from each operating company. Under the terms of the Intercompany Interchange Contract, the operations committee is responsible for assisting in the coordination of economic power system operations, establishing provisions to be included in interconnection agreements with nonassociated companies, approving certain projects and expenditures and otherwise determining "similar power system matters which relate to the overall coordinated operation of the Southern Electric System." The committee meets every two months for approximately two days at various locations, including Gulfport, Mississippi and decisions of the committee must be unanimous. Plaintiff contends that under the operating committee system, Alabama Power has a voice in the operations of Mississippi Power and therefore makes policy decision and takes other actions which affect the activities of Mississippi Power Company in the State of Mississippi.

Plaintiff further alleges that Alabama Power Company and the other operating companies, including Mississippi Power, have from time to time engaged in the joint development of electric power facilities; for example, at one time, Alabama Power employees were "loaned" to Mississippi Power to construct a transmission line in Mississippi and in fact worked in Mississippi for the better part of a year. According to plaintiff, Alabama Power also has an "informal agreement" with Mississippi Power whereby Alabama Power personnel will, in the event of an emergency, assist Mississippi Power in repair of its power lines and other facilities. An additional "contact" alleged by plaintiff is the existence of a joint venture between Alabama Power and Mississippi Power in the development and operation of a generating facility located in Greene County, Alabama; power generated at that facility is delivered to Mississippi through a power line which runs near Meridian, Mississippi.

While at first glance, these alleged "contacts" between Alabama Power and the State of Mississippi may, by sheer numbers, appear to support the exercise of jurisdiction, closer examination reveals the absence of any truly continuous and systematic activities by Alabama Power within Mississippi to justify exercise of jurisdiction consistent with due process. *See Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 333 (5th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983) (number of contacts with forum state not determinative of the jurisdiction issue; significant inquiry is whether contacts suggest purposeful availment by defendant). According to the uncontroverted testimony of Alabama Power representatives, each member company of the Southern Company owns and is responsible for the construction and maintenance of the power plants, transmission lines and interconnection facilities within its service area. Consequently, Mississippi Power maintains the facilities in its service area in Mississippi; Alabama Power is responsible for the facilities and equipment in Alabama. Alabama Power owns no plants or facilities or other property in Mississippi and has no offices or personnel here. Its only contact with the State of Mississippi is through its status as one of the operating companies of The Southern Company and through Southern Companies Services.

As to the specific jurisdictional contacts advanced by plaintiff, the informal understanding that Alabama Power will provide personnel to assist Mississippi Power for emergency repairs does not benefit Alabama Power except to the extent that Ala-

bama Power may receive the same type of assistance from other member companies, including Mississippi Power, in the event of an emergency. Moreover, the fact that Alabama Power has, on one occasion, loaned personnel to Mississippi Power does not tend to establish that Alabama Power was doing business in Mississippi. At best, that was also an isolated occurrence and in any event, the loaned personnel were, at the time, engaged not in the business of Alabama Power but rather in the business of Mississippi Power which owned and maintained the power line in question. Further, the pertinent deposition testimony reveals that as to the joint venture relative to the Greene County, Alabama facility, the plant itself is located in Alabama, not Mississippi, and while Mississippi Power does receive power generated by the plant, the transmission line which serves Mississippi Power is owned by Mississippi Power from the point of origin at the plant.

As to the alleged "sale" and "purchase" of power between Mississippi Power and Alabama Power, such transactions are more appropriately viewed as an exchange of power which flows between the two states. In this vein, the court observes that the power generated by The Southern Company system may be transferred between any of the member companies and not just between Alabama Power and Mississippi Power. Certainly, no power is directly sold by Alabama Power to Mississippi consumers and in the court's view, Alabama Power's characterization of these exchanges as "an inescapable by-product of electric generation to even out shortages and surpluses" provides the more appropriate description.[6] In the court's opinion, these exchanges of power do not amount to a purposeful availment by Alabama Power of the benefits and protections provided by Mississippi. In fact, according to the deposition testimony of Richard A. Bowden, Secretary of Alabama Power, it has been the long standing corporate policy of Alabama Power to "not take any action which would be construed as doing business in Mississippi." *See Thompson,* 755 F.2d at 1169 (citing *World Wide Volkswagen,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (nonresident may permissibly structure its primary conduct so as to avoid being haled into court of particular state).[7] A similar analysis applies to the transfer of power to TVA and MP & L at the interconnection points in Mississippi.

As to the agency status of Southern Companies Services, the scope of that "agency" relationship is limited to billing, collection and payment settlement functions between Alabama Power and its Southern Company affiliates and to the negotiations of agreements with nonaffiliated companies. Moreover, plaintiff's characterization of Southern Companies Services as Alabama Power's agent, while perhaps technically correct, does not paint a true picture of the relationships involved. Southern Companies Services acts as an agent, not specifically for Alabama Power, but rather for The Southern Company. Hence, Southern Company Services acts for The Southern Company, which owns each of the affiliates, and does not act merely for Alabama Power.[8]

---

6. Larry White, the manager of Electrical System Planning and Power Contractors for Alabama Power, explained that

   [b]ecause of the coordinated planning and the joint operation of the total system, then, there may be periods of time where there are temporary surpluses or deficits in a particular operating company and we agree to share those surpluses or deficits from time to time and, therefore, there is an exchange of dollars to represent that sharing.

7. Defendant also urges that the flow of electricity between Alabama and Mississippi does not amount to the sale of a product within Mississippi but rather is solely an interstate transac-

tion which cannot provide the basis for jurisdiction. That is, it is Alabama Power's contention that the exchange takes place at the border between the states because of its interstate nature. Plaintiff disputes this contention, but in the court's view, whether or not the exchange is characterized as interstate does not affect the court's conclusion.

8. In a sense, the relationship of Southern Companies Services to the various affiliates is somewhat analogous to a parent/subsidiary relationship. This observation would appear to apply equally to the relationship between The Southern Company and each of the affiliates, including Alabama Power and Mississippi Power. It

Further, while the operating committee of the Southern Companies is intended to foster coordinated planning for the electrical interchange between the operating companies, the committee provides no services to any utility's customers and more importantly, while it may make certain broad policy decisions, it does not control the day to day activities of any of the operating companies. Finally, while the operating committee does participate in decisions concerning the operations of Mississippi Power, it does not have control over those decisions as plaintiffs appear to imply. Rather, Alabama Power's participation on the operating committee relates not only to Mississippi Power but to the entire power system; its participation on the committee is as one of several representatives and it, as do the other member companies of The Southern Company, has but one vote. So, while Alabama Power may participate in decisions relating to Mississippi Power, that participation is indirect and tenuous and is insufficient to support the exercise of personal jurisdiction. Moreover, the operating committee's authority does not extend to all decisions relating to the power system of The Southern Company; its sphere of authority is a limited one. Further, the fact that the committee may, at times, meet within the State of Mississippi, while perhaps not necessarily fortuitous, clearly does not constitute a significant contact with Mississippi.

In sum, the court concludes that based on the foregoing, the motion of Alabama Power Company to dismiss for lack of *in personam* jurisdiction should be granted. Plaintiff has failed to demonstrate that the activities of Alabama Power relating to the State of Mississippi evidence a purposeful availment by Alabama Power of the benefits and protections of the laws of this state. In fact, as previously observed, Alabama Power has attempted to structure its conduct to avoid such a result. Under the totality of the facts, therefore, the court finds that dismissal of Alabama Power is appropriate and it is ordered that Alabama Power's motion to dismiss is granted.

ORDERED this 27th day of October, 1988.

is well settled that a foreign corporation is not subject to the jurisdiction of a court merely because of any contacts which its subsidiary may have with the forum state. *McCardle v. Arkansas Log Homes, Inc.*, 633 F.Supp. 897 (S.D. Miss.1986).