**PRAIRIE LIVESTOCK INC., Plaintiff,**

**v.**

**SOUTHEAST LIVESTOCK LTD., Defendant.**

**No. 1:93CV89–S–D.**

United States District Court,
N.D. Mississippi,
Eastern Division.

June 13, 1994.

---

1. See ¶ 15 .of petition.

Hunter M. Gholson and Franklin Williams, Gholson, Hicks, Nichols & Ward, Columbus, MS, for plaintiff.

Grady F. Tollison, III, Tollison, Austin & Twiford, Oxford, MS, for defendant.

## OPINION

SENTER, Chief Judge.

In this diversity action, plaintiff, a Mississippi corporation, charges that defendant, a Canadian corporation, breached a contract for the sale and delivery of cattle. As a result of defendant's alleged breach, plaintiff was forced to purchase other cattle on the open market in excess of the contract price. This cause is presently before the court on defendant's motion to dismiss for lack of *in personam* jurisdiction.

## FACTS [1]

During the summer of 1988, Paul Ripley, on behalf of the defendant, Southeast Livestock Ltd., first contacted the plaintiff, Prairie Livestock Inc., in West Point, Mississippi, about the prospect of selling cattle to Prairie. Ripley initiated this contact and propositioned Prairie on a unilateral basis. At that time, Prairie and Southeast discussed a possible business relationship but did not immediately pursue the matter.

Several months later, in January, 1989, Ripley again contacted Prairie, and based on these discussions, the two companies entered into an arrangement whereby Prairie bought

---

1. These facts are taken almost exclusively from the unrefuted affidavit of Jimmy Bryan, the presi- dent and chief executive officer of Prairie.

cattle from Southeast at a negotiated price. Prairie then sold the cattle to a third party and notified Southeast of the delivery sites and dates. In turn, Southeast delivered the cattle directly to the third party without passing through Prairie's Mississippi facilities. Between 1989 and 1993, Prairie and Southeast entered into and carried out over 450 separate cattle transactions totalling over $27,000,000.00.

Contract negotiations and the transactions themselves were carried out over the telephone and through the postal service. The contracts between Prairie and Southeast were either oral or written. If a transaction was based on a written contract, the contract was negotiated over the telephone and put into writing in Mississippi. The contract was then mailed to Southeast in Saskatchewan, Canada, where it was executed and returned to Mississippi to be approved and finalized by Prairie. Prairie processed all payments to Southeast in Mississippi. Although Ripley contacted Prairie on numerous occasions to discuss possible deals, contracts, problems with delivery, and cattle availability, he personally came to Mississippi only one time.

With regard to the contract at issue, Prairie contacted Southeast via telephone in December, 1992, about buying 1200 head of cattle for January, 1993, delivery in Colorado.[2] On at least one occasion during the negotiation period, Ripley called Prairie to discuss the contract. As a result of these discussions, Prairie sent Southeast a cattle purchase contract confirmation which provided, *inter alia:*

> Failure to make objections to any term of this confirmation of contract will be understood as [Southeast's] approval and acceptance of the terms and conditions stated herein.... [T]his contract will be binding ... if there has not been such immediate objection, even if no signed confirmation of contract is returned by [Southeast].

The document further stated that the "laws of the State of Mississippi shall govern this contract." Accompanying the contract was a downpayment check for $36,000.00. South-

east did not object to any of the contract provisions, and when it did not deliver the cattle, Prairie was forced to purchase replacement cattle on the open market for approximately $42,000.00 more than the price negotiated with Southeast.

## DISCUSSION

 A nonresident defendant is subject to personal jurisdiction in a diversity case to the extent permitted by the laws of the forum state. *Cycles, Ltd. v. W.J. Digby, Inc.,* 889 F.2d 612, 616 (5th Cir.1989). This court may assert personal jurisdiction over Southeast if (1) Mississippi's long-arm statute applies, and (2) the exercise of jurisdiction under that statute comports with the dictates of the Due Process Clause of the Fourteenth Amendment. *Cycles,* 889 F.2d at 616. Plaintiff bears the burden of proving both of these requirements, *Applewhite v. Metro Aviation, Inc.,* 875 F.2d 491, 494 (5th Cir. 1989), although the constitutional issue will not be considered if service was defective under the long-arm statute. *Cycles,* 889 F.2d at 616. *See also Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1167 (5th Cir. 1985).

### I.

 Mississippi's long-arm statute provides in pertinent part:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

---

**2.** The information regarding Prairie's initiation of this particular contact was taken from Ripley's

affidavit and was not contradicted by Prairie.

Miss.Code Ann. § 13–3–57. Prairie argues that personal jurisdiction can be obtained over Southeast under either the contract prong or the doing business prong of this statute. As only one of these provisions must be satisfied, the court focuses its attention on the doing business prong.

The two most recent decisions from the Mississippi Supreme Court that applied the doing business prong of the long-arm statute "focused on the actual language of the long-arm statute" itself, *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 882 n. 7 (5th Cir.1993), which, as noted above, concentrates on nonresident defendants which "do any business or perform any character of work or service in this state." Toward that end, the court looks at whether the defendant "did various acts here for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object." *McDaniel v. Ritter*, 556 So.2d 303, 309 (Miss.1989). *See also Coats*, 5 F.3d at 882.

Under the circumstances presented here, the court has no hesitation in finding that Southeast was doing business in the State of Mississippi as contemplated by the long-arm statute. It is undisputed that Southeast made the initial contact with Prairie nearly five years before the parties' final dealings and that as a result of that contact, an extensive and lucrative business arrangement was launched. This was not a one-time business deal gone awry. That Southeast has no physical presence in Mississippi is not, in this court's opinion, determinative of this question under the facts of this case, for if the nonresident defendant had to be present within the state before it could be found to be doing business here, then it would be very rare for the long-arm statute ever to encompass a brokerage situation such as this. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction"). Accordingly, the court finds that Southeast "did various acts [in Mississippi] for the purpose of realizing a pecuniary benefit," and therefore was, in fact, doing business in this state.

The court proceeds then to the due process question.

## II.

 Recently, the Fifth Circuit concisely described the constitutional questions which must be considered in determining whether the court possesses personal jurisdiction over a nonresident defendant as follows:

> The exercise of personal jurisdiction over a nonresident will not violate due process principles if two requirements are met. First, the nonresident defendant must have purposefully availed [itself] of the benefits and protections of the forum state by establishing "minimum contacts" with that forum state. And second, the exercise of jurisdiction over the nonresident defendant must not offend "traditional notions of fair play and substantial justice."
>
> The "minimum contacts" prong of the inquiry may be further subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. General jurisdiction, however, will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts with the forum state are both "continuous and systematic."
>
> If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, [the court] must then consider whether the "fairness" prong of the jurisdictional inquiry is satisfied. The Supreme Court has stated that the "fairness" of requiring a nonresident to defend a suit in a distant forum is a function of several factors, including the "interests of the forum State."

*Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citations and footnotes omitted).

With regard to the minimum contacts inquiry, the court finds that Southeast's "conduct and connection with [Mississippi] are

such that [it] should reasonably [have] anticipate[d] being haled into court [in this state]." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). There were no random, fortuitous, or attenuated contacts here; rather, Southeast purposefully reached out beyond Canada to engage in an ongoing business relationship with a resident of this state. Furthermore, the choice of law provision in the instant contract "should [not] be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes." *Burger King,* 471 U.S. at 482, 105 S.Ct. at 2187. "Although such a provision standing alone would be insufficient to confer jurisdiction," *id.,* when combined with the parties' longtime relationship, "it reinforced [Southeast's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation [here]." *Id.*

■ The court's inquiry is not yet concluded, for even though minimum contacts exist, the court must decline to exercise jurisdiction over Southeast if prosecution of the action in Mississippi would be unreasonable and unfair. *Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir.1990). The factors to be considered in testing fairness include the burden upon Southeast, the interests of Mississippi, and Prairie's interest in securing relief. *Wilson,* at 647 n. 3. Although Southeast argues generally that it would be "inequitable and unconstitutional" to force it to travel to Mississippi to litigate this cause of action, it has not precisely demonstrated how the burden upon it outweighs the other factors which point toward the reasonableness and fairness of requiring Southeast to defend itself in this court. As noted by the Supreme Court, "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed," *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183, and in this court's opinion, an exercise of personal jurisdiction over Southeast does not violate its rights under that clause.

## CONCLUSION

Having carefully considered the record, the argument of counsel, and the applicable caselaw, the court finds that Mississippi's long-arm statute applies in this case and that the exercise of jurisdiction under that statute comports with the dictates of the Fourteenth Amendment. Accordingly, defendant's motion to dismiss for lack of *in personam* jurisdiction is not well taken and is denied.