The WILLOWBROOK FOUNDATION, INC., Plaintiff,

v.

VISITING NURSE ASSOCIATION, INC., Defendant.

No. Civ A 1:99CV295–D–D.

United States District Court, N.D. Mississippi, Eastern Division.

Feb. 10, 2000.

S. Craig Panter, Kirkland & Barfield, Jackson, MS, for plaintiff.

David J. Cocke, The Bogatin Law Firm, PLC, Memphis, TN, for defendant.

## OPINION

DAVIDSON, District Judge.

The following matters are before the court: 1) Defendant, Visiting Nurse Association, Inc.'s, motion to dismiss for lack of in personam jurisdiction, for improper venue, for insufficiency of service of process, or alternatively, to transfer venue, and 2) Defendant's appeal of the Magistrate Judge's order of January 6, 2000, denying Visiting Nurse Association's motion for a protective order. Upon due consideration, the court finds that the Defendant's motion to dismiss shall be denied, that this cause of action shall be transferred to the Western District of Tennessee, and that the decision of the Magistrate Judge shall be affirmed.

## I. *Factual Background*

Plaintiff, The Willowbrook Foundation, Inc. (Willowbrook), a Mississippi non-profit corporation engaged in the business of providing home health services to patients who are eligible for Medicare benefits, filed a complaint against Visiting Nurse Association, Inc. (VNA), on August 27, 1999, in the Chancery Court of Lowndes County, Mississippi. In its complaint, Willowbrook asserted claims for specific performance and breach of contract arising out of an Asset Purchase Agreement entered into by the parties. On September 28, 1999, VNA removed the action from the chancery court to this court on the basis of diversity jurisdiction. On November 3, 1999, VNA filed the instant motion to dismiss contending that it is not subject to the personal jurisdiction of this court, that service of process was inadequate, that venue is improper, or alternatively, that the case should be transferred to the Western District of Tennessee.

On or about April 22, 1998, VNA, a Tennessee corporation, retained Health Care Concepts, Inc. (HCC), also a Tennessee corporation, to explore the possibility of selling substantially all of VNA's assets and to facilitate any such sale. In an effort to find a buyer, VNA, acting through HCC, sent out targeted mailings and placed telephone calls to organizations in eight states, including Mississippi, providing notice of VNA's willingness to enter into discussions regarding the potential sale of its assets.

In response to one of VNA's solicitation letters, Mark Alexander, Chairman of Dynahealth, Inc., a Mississippi corporation, placed a telephone call to HCC and expressed interest in having Dynahealth's subsidiary, The Willowbrook Foundation, Inc., purchase VNA's assets. On April 30, 1998, Mr. Alexander signed a confidentiality agreement allowing the parties to initiate discussions regarding the possible sale of VNA's assets, and on May 14, 1998, a letter of intent was sent to HCC formally indicating Dynahealth's intent that Willowbrook purchase VNA's assets. Over the ensuing months the parties negotiated the terms of the sale, a significant portion of which were carried out through telephone calls, mail, and facsimile transmissions between HCC and Dynahealth. *See* Affidavit of James Byrd. On September 22, 1998, representatives from Dynahealth and Willowbrook traveled to VNA's offices in Memphis, Tennessee to participate in a preliminary meeting with VNA representatives regarding the sale.

On September 28, 1998, Willowbrook and VNA consummated the negotiations and entered into an Asset Purchase Agreement which required Willowbrook to acquire all of VNA's interest in certain assets. Under the terms of the Agreement, Willowbrook was to pay an amount equal to the sum of $115,000 and the value of the "Net Assets" as defined in the Agreement. Pursuant to section 2.2 of the Agreement, the term "Net Assets" was defined as all of VNA's assets (excluding cash) less the current liabilities which Willowbrook was assuming. The parties recognized that, at the time of closing, there may remain disagreement as to the value of VNA's Net Assets. Thus, the Asset Purchase Agreement provided that if within 70 days after closing, the parties could not reach an agreement on the value of the Net Assets, VNA would provide Willowbrook a list of five independent accountants to resolve the dispute. Willowbrook would then choose one accountant from the list to determine the value of the assets and such calculation would be binding on both parties.

Ultimately, the parties could not agree on the value of the Net Assets. During the valuation discussions, VNA placed the sum of $80,000 in an escrow account for the purpose of paying Willowbrook if it was later determined that the value of the Net Assets was a large negative number, thereby requiring VNA to refund a portion of Willowbrook's payment. Willowbrook filed this action alleging that VNA failed and refused to comply with section 2.2 of the Asset Purchase Agreement, specifically seeking to compel VNA to submit a list

of five accountants to make an independent calculation of VNA's Final Net Assets.

In addition to the Asset Purchase Agreement, VNA and Willowbrook entered into an Escrow Agreement containing a Tennessee choice of law provision. VNA contends that the parties are, in reality, disputing over the funds being held in the escrow account in Memphis, Tennessee. Conversely, Willowbrook argues that the dispute arises out of the Asset Purchase Agreement, which contains a Mississippi choice of law provision.

## II. *Discussion*

### A. *Personal Jurisdiction*

 A nonresident defendant shall be subject to personal jurisdiction in a federal diversity suit to the extent permitted by the laws of the forum state and the considerations of constitutional due process. *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir.1990). The extent of federal jurisdiction over a nonresident defendant is determined by a two-step inquiry: 1) the defendant must be amenable to service of process under the forum state's jurisdictional long-arm statute, and 2) the exercise of jurisdiction under the state statute must comport with the dictates of the due process clause of the Fourteenth Amendment. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104–05, 108 S.Ct. 404, 409–10, 98 L.Ed.2d 415 (1987). Because proper service of process is not synonymous with amenability to an assertion of personal jurisdiction, the fact that service was effected does not resolve the jurisdictional issue. *Applewhite v. Metro Aviation, Inc.*, 875 F.2d 491, 494 (5th Cir. 1989). Once personal jurisdiction has been challenged, plaintiffs bear the burden of establishing this court's jurisdiction over nonresident defendants. However, plaintiffs need not make a full showing on the merits that jurisdiction is proper but must make a prima facie showing of the facts upon which in personam jurisdiction is predicated to avoid dismissal for lack of jurisdiction. In this regard, "the allegations of the complaint, except as contro-

verted by the defendant's affidavits, must be taken as true." *Strong v. RG Indus., Inc.*, 691 F.Supp. 1017, 1018 (S.D.Miss. 1988) (internal citations omitted).

### 1. *Mississippi Long–Arm Statute*

Mississippi's long-arm statute provides in relevant part:

Any non-resident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

MISS.CODE ANN. § 13–3–57 (Supp.1993). The Mississippi Supreme Court has construed section 13–3–57 as applicable to three types of nonresident defendants: (1) nonresidents who make a contract with a Mississippi resident to be performed in whole or in part within the state; (2) nonresidents who commit a tort in whole or in part within the state against a resident or nonresident; and (3) nonresidents who are "doing business" within the state. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1167–68 n. 5 (citing *Smith v. Temco, Inc.*, 252 So.2d 212, 214–16 (Miss.1971)). The reach of Mississippi's long-arm statute is broad. It allows Mississippi courts to exercise jurisdiction over nonresident defendants whose conduct within the state has caused an alleged injury, and over nonresident defendants who have availed themselves to the protection of the laws of the State of Mississippi. The long-arm statute requires the satisfaction of at least one of its conditions before it may be utilized. Willowbrook claims that the De-

fendant falls under the contract prong of the Mississippi long-arm statute.

### 2. Contract Prong

█ The question before the court is whether Willowbrook and VNA entered into a contract "to be performed in whole or in part by any party in this state." VNA contends that the Asset Purchase Agreement was not a contract that was to be performed in whole or in part in Mississippi. To this end VNA argues that, although it did make a contract with Willowbrook, a Mississippi resident, the contract was consummated in Tennessee, was to be performed in accordance with the laws of the State of Tennessee, and that all meetings and negotiations between the parties took place in Memphis, Tennessee. Willowbrook, however, argues that it was VNA that initially reached out to the State of Mississippi to solicit potential buyers for its Tennessee operations, that a contract was executed containing a Mississippi choice of law provision, and that the specific provision of the contract in dispute requires VNA to perform an act within the State of Mississippi, i.e., submit to Willowbrook a list of five independent accountants. Initially the court notes that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction. *Colwell Realty Investments v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1334 (5th Cir.1986). For the reasons stated below, the court is of the opinion that the contract between Willowbrook and VNA involving the purchase of VNA's assets required actions in this state, and therefore, the Defendant falls under the broad reach of the Mississippi long-arm statute.

The parties entered into an Asset Purchase Agreement and an Escrow Agreement, each containing different choice of law provisions. Although the Defendant contends that the Escrow Agreement is in dispute, this court disagrees. No term or provision of the Escrow Agreement is alleged to have been breached by VNA, only section 2.2 of the Asset Purchase Agreement appears in dispute. The instant action is founded upon, and seeks enforcement of, a contractual obligation of the Defendant in favor of the Plaintiff, to be performed by the Defendant within the State of Mississippi. Specifically at issue is the Defendant's failure to supply Willowbrook with a list of five independent accountants to reconcile the value of the Net Assets. The Asset Purchase Agreement provides further proof of the Defendant's sufficient contact with this state and their contemplation of at least part performance of contractual obligations in this state in the event the parties could not agree on the asset value.

To summarize, the Defendant played an active role in developing and extending a business relationship with a Mississippi resident. VNA negotiated extensively with a Mississippi resident in an effort to secure a buyer for its assets, cultivated a relationship with Willowbrook, and could reasonably expect to answer for any alleged misdeeds arising out of that relationship in Mississippi. The court is of the opinion that it does have personal jurisdiction over the Defendant under the contract prong of the Mississippi long-arm statute.

### 3. Constitutional Analysis

Once the court determines that the state law prong of the jurisdictional analysis is satisfied, a plaintiff must still demonstrate that the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment. The court must find that the nonresident defendants have (1) purposefully established "minimum contacts" with the forum state and, if so, (2) that entertainment of the suit against the nonresident would not offend "traditional notions of fair play and substantial justice." *Bullion*, 895 F.2d at 216 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

#### a. Minimum Contacts

The court first addresses the minimum contacts requirement. A defendant has

the requisite minimum contacts with a state when "it purposely avails itself to the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). At this stage of the analysis, the focus is upon the nature of the underlying litigation. *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1361 (5th Cir.1990). Minimum contacts with the forum state may arise incident to the federal court's "general" or "specific" jurisdiction over the nonresident defendant. The court may exercise specific jurisdiction when the suit "arises out of or is related to" the defendant's contacts with the forum. *Petroleum Helicopters, Inc. v. Avco Corp.,* 804 F.2d 1367, 1370 (5th Cir. 1986). General jurisdiction involves a suit which does not arise from the nonresident defendant's contacts with the forum state and can be asserted only over nonresident defendants who maintain "continuous and systematic contacts" with the forum state. *Interfirst Bank Clifton v. Fernandez,* 844 F.2d 279, 283 (5th Cir.1988) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984)).

■ The court is of the opinion that the exercise of specific jurisdiction is appropriate under the facts of the instant case. Here, the Defendant entered into a contract with a resident of this state, an agreement which was to be performed "in whole or in part" here. VNA, acting through HCC, solicited potential buyers in the state and ultimately conducted negotiations regarding the terms of the contract via telephone communication, mail, and facsimile transmissions from Tennessee to Mississippi. It is axiomatic that the contacts of a corporation's agents or representative can subject the corporation to personal jurisdiction. *See United Elec., Radio and Machine Workers of America v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1090 (1st Cir.1992). In the case *sub judice,* the parties in this cause of action and their representatives engaged in extensive communications and negotiations in an attempt to secure present and future benefits from the purchase/sale of VNA's assets. As a result, the Defendant has sufficient minimum contacts with the forum to warrant jurisdiction.

### b. Fairness

■ In addition to the above, the court cannot exercise jurisdiction over a defendant if it offends "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154. In making this determination, a court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Ind. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92, 105 (1987).

The court finds on the record before it that its exercise of jurisdiction is neither unfair nor unreasonable. The burden upon the Defendant is not so great in this instance as to prevent the court's exercise of jurisdiction. As previously noted, the Defendant entered into a contract with a Mississippi resident in an attempt to secure the sale of substantially all of its assets. The Defendant's activities, including soliciting buyers in the state, directing negotiations in the state, drafting and signing a contract which not only provided for contingency contractual obligations within the state, but also that the terms of the Asset Purchase Agreement would be governed by Mississippi law, are such that it could reasonably foresee being hailed into this forum's court. Further, the State of Mississippi has an interest in providing citizens who do business in this state, such as Willowbrook, redress against other individuals whose acts in Mississippi cause damage in this state.

The Plaintiff has made a prima facie showing that the Defendant is amenable to service of process under the Mississippi long-arm statute and that exercise of jurisdiction over this Defendant comports with the dictates of the due process clause of the Fourteenth Amendment. Accordingly, the Defendant's motion to dismiss for lack of in personam jurisdiction will be denied.

### B. *Venue or Transfer*

Alternatively, the Defendant moves to dismiss for lack of venue or to have the court transfer this action to the United States District Court for the Western District of Tennessee, Western Division, pursuant to 28 U.S.C. § 1404(a). The court will address these issues in turn.

■ Jurisdiction of this case is predicated on diversity of citizenship. In diversity actions, venue is proper only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose. 28 U.S.C. § 1391. However, the general venue statutes, including Section 1391, do not apply to cases that are removed to federal court from state court. *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665–66, 73 S.Ct. 900, 902–03, 97 L.Ed. 1331 (1953). Instead, venue of removed actions is governed by the removal statute itself which specifically provides that the proper venue of a removed action is "the district of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Thus, a defendant's voluntary application for removal confers venue over him. *Seaboard Rice Milling Co. v. Chicago, R.I. & P. Ry. Co.*, 270 U.S. 363, 367, 46 S.Ct. 247, 248, 70 L.Ed. 633 (1926). It is therefore immaterial whether this forum would have been an improper venue had this action been brought here originally. Notwithstanding that its removal precludes a challenge to venue as improper, VNA may still pursue a transfer pursuant to 28 U.S.C. § 1404(a). *Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.*, 725 F.Supp. 317, 320 (S.D.Miss.1989).

■ VNA does not argue that this case should be dismissed under the federal doctrine of forum non conveniens. Rather, VNA seeks to have this court transfer the civil action to the United States District Court for the Western District of Tennessee. Section 1404(a) provides as follows:

(a) For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

When considering the propriety of a transfer pursuant to Section 1404(a), the court must determine the appropriateness of such transfer in light of the particular circumstances of the parties and the controversy. *Pierce v. Alleluia Cushion Co.*, 397 F.Supp. 338 (N.D.Miss.1975). A number of factors are to be considered in determining whether to transfer a cause of action, and while relevant factors vary depending upon the particular case, the Supreme Court has enunciated several considerations for courts to weigh:

Important considerations are the relative ease of access to sources of proof; the availability of compulsory process for the attendance of unwilling, and the cost of obtaining the attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all of the practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

Normally, in determining the propriety of a transfer, the plaintiff's choice of forum is entitled to great weight. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966). This is particularly true when the plaintiff's choice of forum is his own home state. *M.P. Paul v. International Precious Metals Corp.*, 613 F.Supp. 174, 178–79 (S.D.Miss.1985). Thus, here the choice of Willowbrook, a Mississippi corporation, to initiate suit in Mississippi should be given requisite esteem. Accordingly, the burden

of demonstrating why the action should be transferred falls upon the Defendant.

VNA lists four witnesses, including Michael Carter, President and Chairman of the Board of Directors of VNA, and Karl Erdman, Director of Finance for HCC, who reside in Memphis, Tennessee and maintain full-time employment with organizations other than VNA. These witnesses would be required to take an absence from their employment to travel and testify at a trial in the Northern District of Mississippi. The Plaintiff has proffered six potential witnesses who may be able to give significant, relevant testimony at a trial of this cause. Three of the six witnesses reside in the Memphis area, two of those are employees of VNA and one an employee of HCC. With respect to documentary evidence, Willowbrook states that any necessary documents would be equally available in Mississippi and Tennessee. VNA contends that Willowbrook would not be inconvenienced by traveling to Memphis, given that Willowbrook's representatives made numerous visits to finalize the Asset Purchase Agreement, ultimately purchased VNA's assets, and have established a place of business at VNA's former office location in Memphis. Finally, VNA submits that the primary subject matter of the dispute between the parties is the entitlement to the escrow funds which are being held in an account in Memphis.[1]

Against the inconvenience to the Defendant of trying this action in the Northern District of Mississippi, this court must weigh the inconvenience to a Mississippi resident of traveling to the Western District of Tennessee as opposed to the Northern District of Mississippi. Although this court accords the requisite weight to the Plaintiff's choice of forum, the court finds the above factors preponderate in favor of transfer. Indeed, the most significant factor to consider when passing on a motion to transfer under Section 1404(a) is the convenience of the party and non-party witnesses. *Id.* at 179. Here, over one half of the parties' expected witnesses are located in the Memphis area, the subject funds in dispute are being held in a Memphis bank, any documentary evidence is equally accessible in Tennessee, and finally Willowbrook has established an office in Memphis. That Mississippi law may apply to the cause of action will not singularly override the above findings. After weighing the above factors, the court concludes that the Defendant's motion to transfer for the convenience of the parties and witnesses is well taken and shall be granted. Accordingly, pursuant to 28 U.S.C. § 1404(a), this case will be transferred to the United States District Court for the Western District of Tennessee for further proceedings.[2]

### C. *Magistrate Judge's Order*

The Defendant also appeals from the Magistrate Judge's order of January 6, 2000, denying its motion for a protective order. The court, having reviewed the Defendant's pleading concludes that the Magistrate Judge's decision was neither clearly erroneous, nor contrary to law and shall be affirmed.

An appeal from a Magistrate Judge's ruling on a non-dispositive motion, pursuant to the authority granted in 28 U.S.C. § 636(b)(1), is considered under the "clearly erroneous" standard. A ruling is clearly erroneous, "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

---

1. VNA also contends that it plans to file a separate lawsuit against Willowbrook in the Western District of Tennessee, and that the instant case should be transferred to Tennessee with the other future litigation. Because no case is pending in that District, the court did not consider this argument in its decision.

2. The Defendant makes no argument regarding the insufficiency of service of process and the court will, therefore, not address the issue.

VNA filed a motion seeking a protective order releasing it from responding to discovery on the ground that its motion to dismiss was pending before the undersigned. Although VNA argued that if the case was ultimately dismissed by this court, it would file a similar cause of action in the Western District of Tennessee, it also claimed that any resulting discovery would be useless upon dismissal. The Magistrate Judge found that VNA's motion to dismiss did not address the merits of the cause of action, but merely sought to have Willowbrook litigate its claims in another forum. In denying VNA's motion, the Magistrate concluded that if the case was transferred to Tennessee, the discovery would follow the case and be equally usable in that district.

Traditionally, protective orders have been issued to protect against specific hardships from discovery. To this end, courts require a specific showing of such hardship and vigilantly reject conclusory assertions of unfairness. Here, VNA sought to be relieved from responding to discovery because its motion to dismiss based on venue and jurisdictional grounds was pending before this court. Given that VNA's motion did not seek dismissal of any of the Plaintiff's claims, and that VNA professed its intent to file a similar action in another district, the Magistrate Judge correctly concluded that the parties should proceed with discovery. Although resolution of the Defendant's motion to dismiss renders this appeal and the underlying motion for protective order moot, the court nonetheless concludes that the Magistrate Judge's decision was neither clearly erroneous, nor contrary to law and shall be affirmed.

### III. Conclusion

For the foregoing reasons, the Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction will be denied. Additionally, the Defendant's motion to dismiss for improper venue under Federal Rule 12(b)(3) is denied, the Magistrate Judge's order of January 6, 2000, is affirmed and, pursuant to 28 U.S.C. § 1404(a), this matter will be transferred to the Western District of Tennessee.

A separate order in accordance with this opinion shall issue this day.

### ORDER

Pursuant to an opinion issued this day, it is hereby ORDERED that:

1) the Defendant's motion to dismiss is DENIED;

2) the January 6, 2000 order of the Magistrate Judge is AFFIRMED and;

3) pursuant to this court's authority under 28 U.S.C. § 1404(a), this cause of action is hereby TRANSFERRED in its entirety to the Western District of Tennessee for further proceedings.

All materials considered by the court in ruling on the Defendant's motions are hereby incorporated into and made a part of the record in this cause.