United States Court of Appeals,

Fifth Circuit.

No. 91–4745.

WENCHE SIEMER, etc., et al., Plaintiffs–Appellants,

v.

The LEARJET ACQUISITION CORP., et al., Defendants–Appellees.

Mayade Bahri HELWANI, etc., et al., Plaintiffs–Appellants,

v.

The LEARJET ACQUISITION CORP., et al., Defendants–Appellees.

July 17, 1992.

Appeals from the United States District Court for the Eastern District of Texas.

Before HIGGINBOTHAM and DUHÉ, Circuit Judges, and HUNTER[1], District Judge.

EDWIN F. HUNTER, Jr., District Judge:

Plaintiffs are the survivors of the co-pilot (Michael M. Grandclement) and of two of the passengers (Peter I. Simer and Aladdine H. Bahri[2]) on board Learjet N–711AF, which crashed on August 11, 1979 while en route from Athens, Greece to Jeddah, Saudi Arabia. The aircraft disappeared while traversing Egyptian airspace. The wreckage of the aircraft was discovered nearly eight (8) years later in the Egyptian desert.

In sum, plaintiffs' decedents disappeared from the face of the earth on August 11, 1979, when the plane they were flying disappeared over Egypt. Less than two years later, all of plaintiffs filed wrongful death actions in New York asserting that their decedents were dead. All of these cases were ultimately dismissed on *forum non conveniens* grounds.[3] Learjet was a defendant in one of

_____

[1]District Judge of the Western District of Louisiana, sitting by designation.

[2]Also referred to as Aladin Bahri and Alleaddeen Hassan-al Bahri.

[3]*See* Opinions of October 6, 1981 and May 12, 1983; *see also* Orders of Judgment of October 7, 1981 and May 19, 1983. A fifth action, filed by the survivor of Teresa Drake, another passenger on board Learjet N–711AF, was also dismissed by the May 1983 order.

plaintiffs' suits. Plaintiffs did not appeal.

Ten years later and eight years after being dismissed in New York, plaintiffs filed this second set of wrongful death actions in the United States District Court for the Eastern District of Texas. The district court granted Learjet's Motion to Dismiss on all grounds asserted: lack of *in personam* jurisdiction; improper venue; *forum non conveniens; collateral estoppel;* and *limitations.* Because we hold that the district court correctly ruled that it had no jurisdiction over the corporation in the cause of action asserted, we do not reach defendant's other lines of defense.

## THE CONSTITUTIONAL REQUIREMENTS OF "DUE PROCESS"

Plaintiffs are all residents of Greece or other European countries. Decedents were all residents of Greece. The aircraft was permanently based, maintained and serviced in Greece. It was operated by a Greek company. It was not designed or manufactured in Texas. It was never owned by a Texas resident. It had never been repaired or serviced in Texas. Learjet is a Delaware corporation with its principal place of business in Kansas, where it designed, manufactured and sold its products. Plaintiffs urge us to hold, quite simply, that in state service on a designated corporate agent without more, satisfies the requirements of due process. This Court has never so held and we decline to do so now.

The extent of Learjet's contacts with Texas from the date it began operations to February 26, 1989, the date plaintiffs filed this suit, are revealed in the record. They had not had an employee, an officer or director, an interest in real property, a deposit in any financial institution, or a facility or office located within the state. All sales were made from products warehoused in Kansas or Arizona. Only slightly over one percent (1%) of Learjet's sales, consisting of spare parts went to buyers with Texas addresses. Learjet does hold a certificate from Texas giving it the right to do business in Texas. It does have an agent for process in Dallas, Texas. A wholly-owned, but separately operated, subsidiary transacts business in San Antonio, pursuant to a government contract. Advertisements

have been placed in national journals that are distributed in Texas (as well as all other states), and Learjet has, on occasion, mailed information to prospective customers who happen to be located in Texas.

The fact that service is proper does not resolve the question as to "whether [the] plaintiff has demonstrated a sufficient basis for th[e] court's exercise of personal jurisdiction." *Applewhite v. Metro Aviation, Inc.,* 875 F.2d 491, 494 (5th Cir.1989).

Whether jurisdiction in the sense of due process exists depends upon concepts of "fairness" and "convenience" and not upon mere compliance with procedural requirements of notice, nor even corporate "presence" within the state. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Because plaintiffs' causes of action, as alleged, in no way arose out of Learjet's contacts with Texas, plaintiffs had to show, in order to sustain jurisdiction, that Texas acquired general jurisdiction over Learjet. The leading Supreme Court case on general jurisdiction is *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). There, the Texas Supreme Court determined that a foreign corporation could be sued in Texas in a suit arising out of a helicopter crash in Peru. The United States Supreme Court reversed. The reversal was premised upon a finding that the corporation's contacts were insufficient to establish general jurisdiction. The facts closely resemble those here. Neither plaintiffs nor decedents were or had been domiciled in Texas. The harm suffered did not occur in Texas. The alleged misconduct did not take place in Texas. The corporation had substantial contacts with Texas, *id.* at 410–11, 104 S.Ct. at 1869–71, but the Supreme Court of the United States held those contacts were insufficient to satisfy the requirements of the due process clause of the Fourteenth Amendment. *Id.* at 418–19, 104 S.Ct. at 1874–75.

The facts in *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370 (5th Cir.1987), provide a clear precedent for the resolution of this jurisdictional dispute. There, this Court found that general jurisdiction did not exist in Texas over another Kansas aircraft manufacturer, Beech Aircraft. The only significant factual differences between *Bearry* and this case are: (1) instead of being centered around sister states, Louisiana and Mississippi, the present case centers around foreign nations, Greece and Egypt; (2) Learjet has substantially *less* commerce involving Texas than the *Bearry* defendants had involving their respective forums; and (3) Learjet had appointed an agent for service of process in Texas. The first two items clearly reflect a much more tenuous jurisdictional connection to Texas by Learjet. While the last item, being qualified to do business, may on its face appear to be significant, it "is of no special weight" in evaluating general personal jurisdiction. *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir.), *cert. denied,* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265 (1971); *accord Jones v. Family Inns, Inc.*[4], 1989 WESTLAW 57130, Civ.A. No. 89–0190 (E.D.La. May 23, 1989); *In re Mid–Atlantic Toyota Antitrust Litig.,* 525 F.Supp. 1265, 1278 (D.Md.1981). Plaintiffs' cite no case and this Court has found none that supports the proposition that the appointment of an agent for process and the registration to do business within the state, without more, suffices to satisfy the criteria for the exercise of general jurisdiction.

The facts in *Ratliff* are remarkably similar to those here and its holding—that no general jurisdiction existed—if followed would be dispositive. The defendant had no office, bank account, or warehouse in South Carolina. *Ratliff,* 444 F.2d at 748. It owned no real or personal property there. It did not advertise there except through national journals. Just as Learjet had done in Texas, however, the defendant drug company had qualified to do business in South Carolina and had appointed an agent for service of process in the state. Moreover, the *Ratliff* defendant had maintained five "detail men" who lived in and promoted its products through personal contacts with

---

[4]"As the defendant's sole contact with the State of Louisiana is an appointed agent for service of process, the defendant's contact does not satisfy the minimum contacts requirement of *International Shoe* and therefore maintenance of this suit in this jurisdiction would offend the traditional notions of fair play and substantial justice." *Jones,* 1989 WESTLAW at 57130.

doctors and drugstores throughout the forum state. Nonetheless, even the physical presence of this sales operation in South Carolina failed to tip the scale and subject the defendant to personal jurisdiction.

> "We think the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context. Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another."

*Id.* at 748.

Plaintiffs tout *Burnham v. Superior Ct.,* 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990), as being dispositive of the jurisdictional issue. This is puzzling. *Burnham* did not involve a corporation and did not decide any jurisdictional issue pertaining to corporations.

Burnham, a New Jersey resident, during a visit to California to visit his children was served with a court summons and his estranged wife's divorce petition. She was a resident of California. The courts of that state rejected Burnham's contention that the Due Process Clause of the Fourteenth Amendment prohibited courts of that state from asserting personal jurisdiction over him. The Supreme Court unanimously affirmed and agreed that the rule allowing jurisdiction to be obtained over a non-resident by personal service in the forum state could not be held violative of due process under the circumstances of that case.

Justice SCALIA (with three Justices concurring) reasoned that jurisdiction based on physical presence, alone, constitutes due process because it is a continuing tradition of our legal system. Justice BRENNAN (with three Judges concurring), applied a more flexible approach. He had in essence this to say: Historical pedigree, although important, is not the only factor to be taken into account in establishing whether a jurisdictional rule satisfies due process, and that an independent inquiry into the fairness of the prevailing in-State service rule must be undertaken.

Justice WHITE wrote separately to the effect that there had been no showing here that the rule allowing service was so lacking in common sense that it should be held violative of Due Process. Justice STEVENS, in a special concurrence, make some interesting observations.[5]

Contrary to plaintiffs' assertion, nothing in either plurality opinion suggests that service on a corporation's registered agent "automatically subjects the corporation to jurisdiction." *Burnham,* to the extent it provides any guidance, reinforces Learjet's position. Justice SCALIA noted "the continuous and systematic contact rule applied only to corporations, which have never fitted comfortably in a jurisdictional regime based primarily upon de facto power over the defendant's person." *Id.,* 110 S.Ct. at 2110 n. 1. The second plurality's opinion reaffirms that all assertions of personal jurisdiction must satisfy the contacts and fairness requirements enunciated in *International Shoe. Id.* at 2120–22.

To assert, as plaintiffs do, that mere service on a corporate agent automatically confers *general jurisdiction* displays a fundamental misconception of corporate jurisdictional principles. This concept is directly contrary to the historical rationale of *International Shoe* and subsequent Supreme Court decisions. *See International Shoe,* 326 U.S. at 316–19, 66 S.Ct. at 158–60; *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 444–48, 72 S.Ct. 413, 417–19, 96 L.Ed. 485 (1952); *see also Ratliff,* 444 F.2d at 748. In *Perkins,* the Supreme Court upheld general jurisdiction over a Philippine corporation that had been served in Ohio by serving its president while he was conducting the corporation's business in the state, but only after a thorough "minimum contacts" and fairness analysis. *Perkins,* 342 U.S. at 445–48, 72 S.Ct. at 418–20. The Court refused to find jurisdiction based solely upon service on the president, and went on to state that the fact that a corporation's activities caused it to have a registered agent in the forum state was "helpful but not a

---

[5]"For me, it is sufficient to note that the historical evidence and consensus identified by Justice SCALIA, the considerations of fairness identified by Justice BRENNAN, and the common sense displayed by Justice WHITE, all combine to demonstrate that this is, indeed a very easy case." Then he noted: "Perhaps the adage about hard cases making bad law should be revised to cover easy cases." *Burnham,* 110 S.Ct. at 2126.

conclusive test" in the jurisdictional equation. *Id.* at 445, 72 S.Ct. at 418. Indeed, the *Ratliff* court held that a corporation's qualification to do business in the forum state and service on its registered agent in the state "is of no special weight in evaluating general personal jurisdiction." *Ratliff,* 444 F.2d at 748. The *Ratliff* defendant, who had not only qualified to do business and appointed an agent for service of process, but maintained five salesmen in the forum, clearly presents a much greater presence than any Learjet might have had in Texas. A registered agent, from any conceivable perspective, hardly amounts to "the general business presence" of a corporation so as to sustain an assertion of general jurisdiction. *Bearry,* 818 F.2d at 375; *cf. Smith v. Lloyd's of London,* 568 F.2d 1115, 1118 & n. 7 (5th Cir.1978) (interpreting a Georgia registration statute for insurance companies as requiring more than the mere presence of agents in Georgia to subject a corporation to personal jurisdiction and questioning the constitutionality of a broader interpretation).

Not only does the mere act of registering an agent not create Learjet's general business presence in Texas, it also does not act as consent to be hauled into Texas courts on any dispute with any party anywhere concerning any matter. The Texas Business Corporation Act provides that service on a registered foreign corporation may be affected by serving its president, any vice president, or the registered agent of the corporation. (Tex. Bus.Corp. Act Ann. art. 8.10(A)). No Texas state court decision has held that this provision acts as a consent to jurisdiction over a corporation in a case such as ours—that is where plaintiffs are non-residents and the defendant is not conducting substantial activity within the state. Learjet does not contest the "potential" jurisdiction of Texas courts. They do assert and we agree that the appointment of an agent for process has not been a waiver of its right to due process protection.

The Eighth Circuit, construing an Arkansas registration statute even less explicit as to its limited scope, found that the statute could be read, "at its broadest, to cover only causes of action arising out of ... transactions in Arkansas." *Pearrow v. National Life & Accident Ins. Co.,* 703 F.2d 1067, 1069 (8th Cir.1983) (citations omitted). In the First Circuit, it was noted that any other

construction of the Maine registration statute would be unreasonable.  *Sandstrom v. Chemlawn Corp.,* 727 F.Supp. 676, 681 (D.Me.1989), *aff'd,* 904 F.2d 83 (1st Cir.1990).

In short, a foreign corporation that properly complies with the Texas registration statute only consents to personal jurisdiction where such jurisdiction is constitutionally permissible.  Due process, as this Court often has said, is a flexible concept that varies with the particular situation.  Our due process jurisprudence has evolved substantially since the seminal case of *International Shoe,* but under any analysis, it would be violative of due process to require Learjet to defend this suit in Texas. The district court was eminently correct in so holding.[6]

We affirm the district court's dismissal of this case.

AFFIRMED.

---

[6]The circumstances are reminiscent of *Dalton v. R. & W. Marine, Inc.,* 897 F.2d 1359 (5th Cir.1990).  There this court concluded:

> "..., aside from its role as the forum state, Louisiana has no interest in this litigation.  It appears that the attorneys are the only participants with any ties to the forum." *Id.* at 1363.