O’MALLEY, Circuit Judge,
concurring.
I agree that the district judges in these appeals have jurisdiction to hear the cases before them. I write separately because I believe we should reach the question of general jurisdiction, which the parties raise and the district judges decided. The specific jurisdiction issue, which the majority exclusively decides, is a more difficult question to resolve than the question of the continuing precedential effect of the line of Supreme Court authority articulated most clearly in Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610 (1917). The parties dispute a host of factual questions regarding the specific jurisdiction issue, including whether and to what extent My-lan ultimately may be authorized to — or decide to — market generic drugs in Delaware. And, as I explain below, I would find specific jurisdiction over Mylan in these cases under a different legal theory than employed by the majority, evidencing the complexity of the question posed in the circumstances created by operation of the Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417, 98 Stat. 1585 (1984), commonly known as the Hatch-Waxman Act.
While there is no requirement that a court consider general jurisdiction before, or in addition to, its consideration of specific jurisdiction, the Supreme Court has given some guidance about the sequencing of jurisdictional decisions. In Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) and Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999), the Court reiterated the longstanding principle that, “[wjithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.” 523 U.S. at 94, 118 S.Ct. 1003 (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)) (internal quotation marks omitted). Without jurisdiction, a court may not proceed to dispose of a case on the merits.
Ruhrgas addressed the particular question of whether, “[i]f, as Steel Co. held, *765 jurisdiction generally must precede merits in dispositional order, must subject-matter jurisdiction precede personal jurisdiction on the decisional line? Or, do federal district courts have discretion to avoid a difficult question of subject-matter jurisdiction when the absence of personal jurisdiction is the surer ground?” 526 U.S. at 577-78, 119 S.Ct. 1563. Rather than dictate a required order, the Court found “no unyielding jurisdictional hierarchy” between personal jurisdiction and subject-matter jurisdiction. Id. at 578, 119 S.Ct. 1563. Yet it did endorse addressing more straightforward jurisdictional questions first. The Court found that, when “a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction.” Id. at 588, 119 S.Ct. 1563. So too here, when a case may be decided on the grounds of either general or specific personal jurisdiction, I believe we should begin with the more straightforward of the two.
As Ockham’s Razor advises, the simpler path is usually best. See, e.g., Awkal v. Mitchell, 613 F.3d 629, 655 (6th Cir.2010) (Boyce, J., dissenting) (“At some point; Ockham’s Razor must apply — the simplest answer is usually the correct one.”); Commodity Futures Trading Comm’n v. Zelener, 373 F.3d 861, 868 (7th Cir.2004) (Easterbrook, J.) (“Best to take Occam’s Razor and slice off needless complexity.”). The majority finds specific personal jurisdiction because “Mylan’s ANDA filings constitute formal acts that reliably indicate plans to engage in marketing of the proposed generic drugs” in Delaware, Maj. Op. at 760, while expressly declining to discuss general personal jurisdiction, id. at 757. In this case, however, because I believe that the question of -general jurisdiction is mdre straightforward — as it merely requires acknowledging a century-old line of Supreme Court precedent — I believe it should be addressed first. And, to the extent this court finds it necessary to -venture into the more fact-intensive morass of specific jurisdiction, I believe the effects-based test of Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), provides a simpler underpinning for resolution, one that does not require reliance on a defendant’s “planned future conduct in the State.” Maj. Op. at 762.
Discussion
A. General Jurisdiction
The requirement that a court have personal jurisdiction over a defendant before it may act “represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.” Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). As such, personal jurisdiction is a “ ‘personal privilege respecting the venue, or place of suit, which [a defendant] may assert, or may waive, at his election.’ Being a privilege.it may be lost.” Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168, 60 S.Ct. 153, 84 L.Ed. 167 (1939) (quoting Commercial Cas. Ins. Co. v. Consol. Stone Co., 278 U.S. 177, 179, 49 S.Ct. 98, 73 L.Ed. 252 (1929)).
A defendant-may, thus, consent to personal jurisdiction and thereby waive its right to contest it. “[B]ecause the personal jurisdiction requirement is a waivable right, there are- a ‘variety of legal arrangements’ by which a litigant may give ‘express or implied consent to the personal jurisdiction of the court.’ ” Burger King Corp. v. Rudzeuncz, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) *766 (citing Ins. Corp. of Ir., 456 U.S. at 703, 102 S.Ct. 2099). A defendant may consent to personal jurisdiction explicitly, by stipulating in advance to litigate its claims in a particular jurisdiction through a forum selection clause or some other agreement. See Nat’l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16, 84 S.Ct. 411, 11 L,Ed.2d 354 (1964) (“[I]t is settled ... that parties to a contract may agree in advance to submit to the jurisdiction of a given cqurt.....”). A party may also signal consent to personal jurisdiction through its actions, for example, by appearing in court and arguing the merits of the case. See Ins. Corp. of Ir., 456 U.S. at 703, 102 S.Ct. 2099 (“[A]n individual may submit to the jurisdiction of the court by appearance.”). At issue in these appeals is, among other things, whether compliance with a state statute that requires registration and the appointment of an in-state agent for service of process in order to conduct business in that state remains a valid form of express consent to general personal jurisdiction after the Supreme Court’s decision in Daimler AG v. Bauman, — U.S. -, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014). Delaware employs just such a scheme.
In particular, Delaware requires foreign corporations to register to do business in Delaware and to appoint an agent for service of process. Del.Code Ann. tit. 8, § 371(b)(2)(i) (prohibiting a foreign corporation from doing business in Delaware until it registers with the Secretary of State and files “[a] statement .... setting forth (i) the name and address of its registered agent” in Delaware). According to the Delaware Code, “[a]II process issued out of any [Delaware] court ... may.be served on the registered agent of the corporation designated in accordance with § 371.” Id. § 376(a). Foreign corporations that do business in Delaware without registering face statutory fines for violating the mandatory registration requirement. Id. § 378.
In Sternberg v. O’Neil, 550 A.2d 1105 (Del.1988), the Delaware Supreme Court held that compliance with Delaware’s registration statute constitutes consent to general personal jurisdiction. That court held that, “when [a corporation] qualified as a foreign corporation, pursuant to 8 Del.C. § 371, and appointed a registered agent for the service of process, pursuant to 8 Del.C. § 376, [that corporation] consented to the exercise of general jurisdiction by the Courts of Delaware.” Sternberg, 550 A.2d at 1116. In support of its holding, the Delaware Supreme Court cited to Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co., 243 U.S. 93, 96, 37 S.Ct. 344, 61 L.Ed. 610 (1917): “[W]hen a power actually is conferred by a document, the party executing it takes the risk of the interpretation that may be put upon it by the courts.” Sternberg, 550 A.2d at 1116 n. 19; see also id. at 1113—15 (finding that the foreign corporation’s “consent to the general personal jurisdiction of Delaware courts by qualifying as a foreign corporation satisfies due process” and does not constitute an undue burden on interstate commerce).
. Chief Judge Stark (in the Acorda case) and Judge Sleet (in the AstraZeneca case) came to different conclusions on whether compliance .with a state’s registration statute that requires appointment of a registered agent for service of process continues to constitute a valid form of consent to general personal jurisdiction after Daimler. Compare Acorda Therapeutics, Inc. v. Mylan Pharm., Inc., 78 F.Supp.3d 572, 583-92 (D.Del.2015) (holding that, “Daimler. does not eliminate consent as a basis for a state to establish general jurisdiction over a corporation which has appointed an agent for service of process in that state, as is required as part of registering to do *767 business in that state”), with AstraZeneca AB v. Mylan Pharm., Inc., 72 F.Supp.3d 549, 555-58 (D.Del.2014) (holding that, “[i]n light of the holding in .Daimler, the court finds that Mylan’s compliance with Delaware’s registration statutes — mandatory for doing business within the state— cannot constitute consent to jurisdiction, and the Delaware Supreme Court’s decision in Sternberg can no longer be said to comport with federal due process”). I agree with Chief Judge Stark that Daimler did not overrule the line of Supreme Court authority establishing that a corporation may consent to jurisdiction over its person by choosing to comply with a state’s registration statute.
That line began with Ex parte Schollenberger, 96 U.S. (6 Otto) 369, 24 L.Ed. 853 (1877). In Schollenberger, the Supreme Court first held that a state legislature may require a foreign corporation to consent to general personal jurisdiction as a condition of being granted the right to do business in that state: ,
[I]f the legislature of a State requires a foreign corporation to consent to be “found” within its territory, for the purpose of the service of process in a suit, as a condition to doing business in the State, and the corporation. does so consent, the fact that it is found gives the jurisdiction, notwithstanding the finding was procured by consent.
Id. at 377. In St. Clair v. Cox, 106 U.S. (16 Otto) 350, 1 S.Ct. 354, 27 L.Ed. 222 (1882), the Court discussed the problems with the “doctrine of exemption of a corporation from suit in a state other than that of its creation.” Id. at 355, 1 S.Ct. 354. Given “[t]he great increase in the number of corporations of late years, and the immense extent of their business,” the Court found- that such jurisdictional exemptions led to “inconvenience and injustice.” Id. In response to those issues, “the legislatures of several states interposed and provided for service of process on officers and agents of foreign corporations doing business therein;”- Id. The Court found “no sound reason why, to the extent of their agency, [officers and agents of foreign- corporations] should not be equally deemed to represent [the foreign corporation] in the states for which they- are respectively appointed when it is called to legal responsibility for their transactions.”-. Id. As such;
[a] corporation of one state cannot do business in another state without the latter’s consent, express or implied,-and that consent may be accompanied with such conditions as it may think proper to impose.... The state may, therefore, impose as a condition upon which a foreign corporation shall be permitted to do business within her limits, that it shall stipulate that in any litigation arising out of its transactions in the state, it will accept as sufficient the service of process on its agents or persons specially designated, and the condition would be eminently fit and just.
Id. at 356,1 S.Ct. 354. This line of reasoning continued in Pennsylvania Fire, the key, though not final, case addressing the question;
In Pennsylvania Fire, the Court affirmed that it had “little doubt” that the appointment of an agent by a foreign corporation for service of process could subject it to general personal jurisdiction. 243 U.S. at 95, 37 S.Ct. 344. In that, case, the defendant was a .foreign insurance company who had obtained a license to do business in Missouri, and, in accordance with the -law of Missouri, “filed with the superintendent of the insurance department a power of. attorney consenting that service of process upon the superintendent should be deemed personal service upon the. company so long: as it should have-any liabilities outstanding in the state.” Id. at *768 94, 37 S.Ct. 344. The defendant argued that “such service was insufficient except in suits upon Missouri contracts, and that if the statute were construed to govern the present case, it encountered the 14th Amendment by denying to the defendant due process of law.” Id. at 94-95, 37 S.Ct. 344. A unanimous Court disagreed with the defendant, holding that, “when a power is actually conferred by a document, the party executing it takes the risk of the interpretation that may be put upon it by the courts. The execution was the defendant’s voluntary act.” Id. at 96, 37 S.Ct. 344.
In the almost 100 years since the Supreme Court decided Pennsylvania Five, it has had ample opportunity to reconsider its holding. Yet each time the issue arose, the Supreme Court reaffirmed that registration statutes, mandatory for doing business, could confer jurisdiction through consent depending on the interpretation given to those state statutes by state courts. See Robert Mitchell Furniture Co. v. Selden Breck Constr. Co., 257 U.S. 213, 216, 42 S.Ct. 84, 66 L.Ed. 201 (1921) (finding no jurisdiction over a foreign corporation when the compliance statute was limited to “liability incurred within the State,” but noting that “the state law [could] either expressly or by local construction give[ ] to the appointment a larger scope”); Louisville & N.R. Co. v. Chatters, 279 U.S. 320, 329, 49 S.Ct. 329, 73 L.Ed. 711 (1929) (holding “that, in the absence of an authoritative state decision giving a narrower scope to the power of attorney filed under the state statute, it operates as a consent to suit” (citing Pa. Fire, 243 U.S. 93, 37 S.Ct. 344)); Neirbo, 308 U.S. at 175, 60 S.Ct. 153 (holding that, “[a] statute calling for [designation of an agent for service of process in the forum state] is constitutional, and the designation of the agent ‘a voluntary act’ ” (citing Pa. Fire, 243 U.S. 93, 37 S.Ct. 344)).
The Supreme Court’s subsequent decisions in International Shoe and Daimler did not overrule this historic and oft-affirmed line of binding precedent. Indeed, both cases are expressly limited to scenarios that do not involve consent to jurisdiction. In International Shoe, the Court restricted its discussion to eases where “no consent to be sued or authorization to an agent to accept service of process has been given.” 326 U.S. at 317, 66 S.Ct. 154 (emphasis added). Based on the limitation placed on the reach of International Shoe by the Supreme Court itself, after International Shoe, numerous circuit courts continued to uphold the exercise of general jurisdiction over defendants registered to do business in the states at issue, relying on the continuing vitality of Pennsylvania Fire. See, e.g., King v. Am. Family Mut. Ins. Co., 632 F.3d 570, 576, 578 (9th Cir.2011) (“Pennsylvania Fire, Chipman[, Ltd. v. Thomas B. Jeffrey Co., 251 U.S. 373, 40 S.Ct. 172, 64 L.Ed. 314 (1920)], and Robert Mitchell thus collectively stand for the proposition that federal courts must, subject to federal constitutional restraints, look to state statutes and case law in order to determine whether a foreign corporation is subject to personal jurisdiction in a given case because the corporation has appointed an agent for service of process.”); Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 183 (5th Cir.1992) (“No Texas state court decision has held that this provision acts as a consent to jurisdiction over a corporation in a case such as ours — that is where plaintiffs are non-residents and the defendant is not conducting substantial activity within the state.”); Bane v. Netlink, Inc., 925 F.2d 637, 641 (3d Cir.1991) (observing that “[c]onsent is a traditional basis for assertion of jurisdiction long upheld as constitutional”); Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196, 1199-1200 (8th Cir. *769 1990) (noting that, as interpreted by the Supreme Court of Minnesota, “[t]he whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts”); Holloway v. Wright & Morrissey, Inc., 739 F.2d 695, 697 (1st Cir.1984) (“It is well-settled that a corporation that authorizes an agent to receive service of process in compliance with the requirements of a state statute, consents to the exercise of personal jurisdiction in any action that is within the scope of the agent’s authority.”). And, the Second Restatement adopted that same view in 1971. Restatement (Second) of Conflict of Laws § 44 (1971) (“A state has power to exercise judicial jurisdiction over a foreign corporation which has authorized an agent or a public official to accept service of process in actions brought against the corporation in the state as to all causes of action to which the authority of the agent or official. to accept service extends.”). Daimler did not change the law on this point, either.
There is no discussion of registration statutes in Daimler and no citation to Schollenberger, Pennsylvania Fire, or the cases post-dating those two. Indeed, Daimler confirms that consent to jurisdiction is an alternative to the minimum contacts analysis discussed in that case, citing to Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), as “the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.” 134 S.Ct. at 755-56 (emphasis added). Thus, Daimler did not impliedly eradicate the. distinction between cases involving an express consent to general jurisdiction and those analyzing general jurisdiction in the absence of consent; it actually maintains it. Notatily, the Court had no occasion to consider the rule it laid down in Pennsylvania Fire because California — the state where the action at issue was pending — had interpreted its registration statute as one that did not, by compliance with it, give rise to consent to personal jurisdiction. The only question the Court considered was whether the foreign defendant was subject to jurisdiction solely by virtue of its contacts with the state, which were unrelated to the cause of action.
Any argument that Mylan’s express consent to general personal jurisdiction was involuntary, moreover, is not well-taken. In Insurance Corporation of Ireland, the Supreme Court noted .that it “has upheld state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of ceHain state procedures.” 456 U.S. at 704, 102 S.Ct. 2099 (citing, among other cases, Chicago Life Ins. Co. v. Cherry, 244 U.S. 25, 29-30, 37 S.Ct. 492, 61 L.Ed. 966 (1917) (“[Wjhat acts of the defendant shall be deemed a submission to [a court’s] power is a matter upon which States .may differ.”)). The relevant inquiry is not whether Mylan voluntarily consented, to jurisdiction in Delaware, but whether it voluntarily elected to do business in Delaware and to register and elect an agent for service of process in that state. It undoubtedly did.
Notably, Pennsylvania Fire was decided almost 100 years before Mylan chose to register to do business in Delaware. And Sternberg’s interpretation of the registration statute had been on the books for almost twenty of those years. In the face of that legal authority, Mylan knowingly chose to register to do business in Delaware, thereby accepting the implication of having done so.’
' By virtue of the Delaware Supreme Court’s decision in Sternberg, the Delaware registration ,■ statute falls .squarely within the rule of Pennsylvania Fire and *770 its progeny. Unless the Supreme Court or Congress overrules this-line of Supreme Court authority, we.are bound to follow it. Rodriguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (“If a precedent of this Court has direct application in a case, yet appears to rest. on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.”); see also State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997) (Even if' a Supreme Court precedent contains many “infirmities” and rests upon “wobbly, moth-eatén foundations,” it remains the “Court’s prerogative alone to overrule one of its precedents.”). While there may well be reasons why the Supreme Court would choose to overrule Pennsylvania Fire — similar to those discussed in Daimler or others — that is the Court’s prerogative, not ours. Accordingly, I would conclude that Mylan is subject to' general personal jurisdiction 'in Delaware by virtue of its voluntary, express consent to such jurisdiction and end our jurisdictional discussion there.[1]
B. Specific Jurisdiction
A finding that Mylan has consented to general personal jurisdiction obviates the need to consider whether the district courts here had the authority to exercise specific jurisdiction over Mylan in these circumstances. If general jurisdiction exists, a court may “hear any and all claims against” the parties, whereas specific jurisdiction “depends on an ‘affiliatio[n] between the forum and the underlying controversy.’” See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011) (citing von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L.Rev. 1121, 1136 (1966) (hereinafter von' Mehren & Traut-man)). “In contrast to general, all-purpose jurisdiction, specific jurisdiction is coilfined to adjudication of ‘issues deriving from, or connected with, the very controversy that establishes jurisdiction.’” Id. (citing von Mehren & Trautman).
The majority addresses only specific jurisdiction, and finds that it properly can be exercised here. I concur with the majority’s judgment, but not entirely with its reasoning. I agree that Mylan is subject to specific jurisdiction in Delaware, but I would, find specific jurisdiction under .the Supreme Court’s precedent in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and not predicate the exercise of jurisdiction primarily on My-lan’s expressions of future intent.
In Colder, the Court held that, when a defendant engages in intentional acts expressly aimed at the forum state, knowing that those acts will harm a potential plaintiff residing in that state, the courts in that *771 state do not violate due process in exercising jurisdiction over that defendant. Id. ,-at 788-90,104 S.Ct. 1482. The defendants in Calder, two nonresident journalists, argued that a California court could not exercise personal jurisdiction over them for the distribution of an “allegedly libelous story concerning] the California activities of a California resident.” Id. at 788, 104 S.Ct. 1482. The Court analyzed “the 'relationship among the defendant, the forum, and the litigation” to find that minimum contacts existed, justifying the exercise of jurisdiction over the .defendants. Id. (quoting Shaffer v. Heitner, 438 U.S. 186, 204, 97 S.Ct. 2669, 53 L.Ed.2d 683 (1977)) (internal quotation marks omitted).,. Specifically, the Court relied upon the following facts:
The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California . sources, and’ -the brunt of the harm, in terms both of respondent’s emotional distress and the injury to her professional reputation, was suffered in California. ;
Id. at 788-89, 104 S.Ct. 1482. Because “California [was] the focal point both of the story and of the harm suffered,” it was appropriate to exercise jurisdiction over the defendants “in California based on the ‘effects’ of their Florida conduct in California.” Id. at 789, 104 S.Ct. 1482.
The Supreme Court discussed the reach of Calder in Walden v. Fiore, — U.S. -, 134 S.Ct. 1115, 1123-26, 188 L.Ed.2d 12 (2014). There, the Court noted:
The crux of Colder was that the reputation-based “effects” of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of . the nature of the libel tort. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons.
Id, at 1123-24. Walden serves to clarify Colder, but does not overrule it or limit its holding exclusively to libel cases. Rather, it makes clear that due process is not satisfied by a showing of “mere injury to a forum resident”; a court must examine “whether the defendant’s conduct connects him to the forum in a meaningful way.” Id. at 1125. In Colder, the defendants ‘“expressly aimed’ ‘their intentional; and allégedly tortious, actions’ at California because- they knew the National Enquirer ‘ha[d] its largest circulation’ in California, and that the article would ‘have a potentially devastating impact’ there.” Id. at 1124 n. 7 (quoting Colder, 465 U.S. at 789-90,104 S.Ct. 1482). The nature of ANDA litigation is such that, as in Colder, “the focal point both of the [filing of the ANDA] and of the harm suffered” is Delaware. Id. at 1123 (quoting Colder, 465 U.S. at 789, 104 S.Ct. 1482) (internal quotation marks omitted). Jurisdiction over Mylan is proper in Delaware based on the “effects” of the conduct it aimed at Delaware. Id.
A generic drug manufacturer, like My-lan, files an Abbreviated New Drug Application (“ANDA”) with the FDA,- seeking approval to market generic versions of drugs produced by brand-name drug manufacturers, like Acorda and AstraZeneca. See Maj. Op. at 757-58. Mylan’s filing' under paragraph IV of 21 U.S.C. § 355(j)(2)(A)(vii) certifies its belief that Acorda’s and AstraZeneca’s Orange Book patents are invalid or would not be infringed by Mylan’s proposed drug. Id. In this way, the filing of the paragraph IV certifications in ANDA applications at issue here were not random acts that-happen to harm *772 someone living in a particular state. As in Calder, the acts were calculated and directed to cause harm to the intellectual property rights of a known party with a known location. It is an act which — even before a single sale of product in the State of Delaware — called into question the validity and value of property rights protecting the marketing of profitable products by Acorda and AstraZeneca. In so doing, it called into question the very value of their respective businesses. By virtue of the provisions of the Hatch-Waxman Act requiring that they do so, the paragraph IV certification filing also triggered an obligation to quickly file an expensive “infringement” action in an effort to lift the cloud placed on the Appellees’ business interests. See Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S, — U.S. -, 132 S.Ct. 1670, 1677, 182 L.Ed.2d 678 (2012) (“Filing a paragraph IV certification means provoking litigation.”).
Both Acorda and AstraZeneca aré corporations organized under the laws of the State of Delaware. See Acorda Therapeutics, 78 F.Supp.3d at 577 (“Plaintiff Acorda is a corporation organized under the laws of the State of Delaware....”); AstraZeneca AB, 72 F.Supp.3d at 552 (“AstraZeneca’s U.S. subsidiary, AstraZeneca Pharmaceuticals LP ... is a limited partnership operating and existing under the laws of Delaware, with its principal place of business in Wilmington, Delaware.”). These companies clearly experienced legally cognizable injuries in Delaware upon the filing of the ANDA applications by Mylan.[2]
Of course, “[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant’s conduct connects him to the forum in a meaningful way.” Walden, 134 S.Ct. at 1125. The situs of plaintiffs injury and the nature of it are factors in the analysis, but are not determinative standing alone. Id. In Calder, the Supreme Court found specific personal jurisdiction in California even though the allegedly libelous publication was published elsewhere and marketed nationwide. Calder, .465 U.S. at 785, 104 S.Ct. 1482 (noting that the National Enquirer “publishes a national weekly newspaper with a total circulation of over 5 million”). Here, there is no physical, nationally distributed product causing harm to the plaintiffs. Despite that, the targeted nature of an ANDA filing — which is intended to challenge a particular patent owned by a known party with a known location — makes the case at hand just like that in Calder — Ahe harm is targeted only to these Delaware companies, occurs only in Delaware, and is only triggered by the filing of the ANDA. While it is true, as the majority notes, that the filing of an ANDA application indicates Mylan’s desire to market its product on a nation-wide basis, including in Delaware, I find that expression of interest meaningful for different reasons. I believe it reinforces the immediate harm caused by the ANDA filing, regardless of whether such marketing ever occurs.
Finally, I agree with the majority and both district judges that the exercise of *773 specific personal jurisdiction in these cases is reasonable under the Supreme Court’s precedent in Burger King and WorldWide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Maj. Op. at 763-64; Acorda, 78 F.Supp.3d at 594-95; AstraZeneca, 72 F.Supp.3d at 559-60.
For these reasons, I believe that My-lan’s activity falls squarely within the minimum contacts analysis described in Calder and clarified in Walden. Mylan’s paragraph IV certification in its ANDA filing connects it to Delaware — not just to these corporate residents — in a manner that supports a finding of specific personal jurisdiction in that forum.
Conolusion
Thus, I would find that Mylan is subject to general personal jurisdiction in Delaware by virtue of its registration to do business there. To the extent this court has chosen to address the question of specific personal jurisdiction, moreover, I concur in the result reached by the majority that Mylan also' is subject to specific personal jurisdiction in Delaware.

. .One amicus argues that a finding of general personal jurisdiction by virtue of Delaware’s consent-by-registratjon statute would violate the unconstitutional conditions-'doctrine. See Br. of Amicus Curiae Chamber of Commerce 18-21. Because neither party has raised the question, however, it is not before us. Even if it were, moreover, the Supreme Court has upheld the validity of consent-by-registration statutes numerous times since the development of the! unconstitutional conditions doc- . trine.’ In Neirbo, the Supreme Court com- . mented that, the decision to strike down the Texas statute at issue, “which not merely regulated procedure for suit but sought to deny foreign, corporations access to the federal courts’’ was "wholly consistent” with the decision in Schollenberger, which allowed state legislatures to require foreign corporations to consent to general personal jurisdiction as a condition of being granted the right to do ■ business in that state. Neirbo, 308 U.S. at 173-74, 60 S.Ct. 153.

. The act of infringement, which the Supreme Court has called "highly artificial,” Eli Lilly & Co. v. Medtronic, Inc., 496 U.S. 661, 678, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990), is nevertheless a defined and very real act of infringement that takes place wherever the ANDA filer seeks to market its product. On this point, I disagree with Judge Rader’s concurrence in Zeneca Ltd. v. Mylan Pham., Inc., 173 F.3d 829 (Fed.Cir.1999), in which he found that filing an ANDA application merely "create[s] case or controversy jurisdiction” but.does not, like "[mjanufacture, use, offers for sale, and sales,” constitute a "real act[] with actual consequences.” Id. at 836. I agree instead with Judge Gajarsa that the filing of an ANDA application "is a real act with serious consequences." Id. at 834.