# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30062

United States Court of Appeals
Fifth Circuit

**FILED**
December 22, 2017

Lyle W. Cayce
Clerk

GULF COAST BANK & TRUST COMPANY,

      Plaintiff - Appellant

v.

DESIGNED CONVEYOR SYSTEMS, L.L.C.,

      Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:16-CV-412

Before REAVLEY, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

Gulf Coast Bank & Trust Co. ("Gulf Coast") sued Designed Conveyor Systems, L.L.C. ("DCS") in Louisiana. The district court dismissed the suit for lack of personal jurisdiction over DCS, an LLC registered under the laws of Indiana with a primary place of business in Tennessee. Gulf Coast appeals, contending that personal jurisdiction is proper on two theories. First, it argues that because DCS registered to do business in Louisiana, it consented to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30062

personal jurisdiction for any lawsuit in Louisiana.  Second, Gulf Coast argues that DCS had sufficient minimum contacts to create specific jurisdiction.  We disagree with both arguments.  Consequently, we affirm.

## I.     Standard of Review

Where there is no factual dispute, we review de novo the district court's determination that it lacks personal jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).  The party seeking to invoke the court's jurisdiction has the burden to establish it is proper. *See Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).  "A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).

## II.     Background

The Plaintiff in this case, Gulf Coast Bank, identifies itself as "a Louisiana state bank domiciled in the Parish of Orleans."  The Defendant, DCS, identifies itself as "an Indiana limited liability company, with its principal place of business in Franklin, Tennessee."  None of its members are domiciled in Louisiana.

At the heart of this dispute are two separate agreements.  The first agreement is between DCS and Vinex Global, LLC ("Vinex"), a nonparty to this suit.  On June 19, 2015, DCS entered into a subcontract agreement with Vinex related to a Colorado-based project, "Ontrac Denver."  Under this subcontract agreement, Vinex was to furnish all labor, equipment, and materials, for the project.

The second agreement is a Receivables Purchase Agreement between Vinex and Gulf Coast, under which Vinex can sell its accounts receivables to Gulf Coast.  Pursuant to this agreement, on September 3, 2015, Vinex offered

to sell to Gulf Coast an invoice in the amount of $64,311.00 owed by DCS to Vinex. That same day, Gulf Coast sent a letter entitled "Invoice Acknowledgment Agreement" to DCS. This letter was addressed to DCS at its Tennessee office and stated as follows:

> [Vinex] has requested that [Gulf Coast] accept an assignment of the invoice(s) listed below . . . in order to extend financial accommodations secured by a collateral assignment of its accounts receivables. Accordingly, payment of the invoice(s) listed below and any future invoices must be made directly to [Gulf Coast] . . . .

The letter went on to provide two locations for payment of the invoice: one in Dallas, Texas, and the other in New Orleans, Louisiana. The Invoice Acknowledgment Agreement further "request[ed] [DCS's] acknowledgment that the invoice(s) described herein are currently due in the amount indicated below, represents payment for merchandise delivered and/or services rendered, free of any defense, off-set, counterclaim, recoupment or any other limitation." A representative of DCS signed the Invoice Acknowledgment Agreement while in Tennessee.

Beginning in December 2015, Gulf Coast and DCS exchanged correspondence regarding DCS's payment of the invoice, which was outstanding. DCS refused to pay the invoice because "Vinex[,] without justification and without advance notice[,] walked off the job on October 16, 2015." DCS maintained that Vinex thereby breached its contract with DCS and that it had to hire replacement contractors at an increased price.

Gulf Coast initially sued DCS in the Civil District Court for the Parish of Orleans and asserted claims under Louisiana's open account statute, as well as for breach of contract and detrimental reliance. DCS removed the suit to federal court based on diversity jurisdiction, and then moved to dismiss under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(6), or alternatively

No. 17-30062

to transfer.  Gulf Coast voluntarily dismissed the suit and the same day filed this case in the 19th Judicial District Court for the Parish of East Baton Rouge. DCS again removed to federal court and again sought dismissal or transfer.

The district court granted dismissal for lack of personal jurisdiction and denied a subsequent motion for reconsideration.  Gulf Coast now appeals, arguing that personal jurisdiction over DCS is proper.

## III.   Discussion

### A. Consent Theory of Jurisdiction

Gulf Coast principally argues that Louisiana may exercise personal jurisdiction over DCS because DCS, a foreign entity, registered to do business in Louisiana.  Such registration by itself, Gulf Coast argues, amounts to consent to personal jurisdiction in Louisiana for any suit filed there.  This argument potentially poses the question of whether a state can, without violating the Due Process Clause, explicitly require businesses registering in the state to consent to suit in the state by any plaintiff for any act committed anywhere.  We do not have to resolve this question because we conclude that Louisiana does not have such an explicit requirement.

Relying heavily on *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), Gulf Coast maintains that appointing a registered agent amounts to consent to jurisdiction for all suits.  In *Pennsylvania Fire*, the Supreme Court determined that an insurance company was subject to personal jurisdiction in Missouri where it was licensed to do business in Missouri and had consented to service of process in the state. *Id.* at 94–96.  Gulf Coast reads *Pennsylvania Fire* to establish a rule that registering an agent for service of process in a state acts as express consent to be sued by any party in the state.

Whether *Pennsylvania Fire* survived the Court's later decision in *International Shoe v. State of Wash., Office of Unemployment Compensation &*

4

*Placement*, 326 U.S. 310 (1945), is far from certain.  The Supreme Court has stated that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Shaffer v. Heitner*, 433 U.S. 186, 212 (1977).  The Court explicitly determined: "To the extent that prior decisions [decided on the rationales of *Pennoyer v. Neff*, 95 U.S. 714 (1877)] are inconsistent with [*International Shoe*], they are overruled." *Id.* at 212 n.39.  *Pennsylvania Fire* may be one of the many cases that the Supreme Court has explicitly declared overruled by *International Shoe*.

We need not decide the issue because, even assuming *Pennsylvania Fire* survived *International Shoe* and does not fall within the overruling stated in *Shaffer*, Gulf Coast fails to fit this case into its scope.  Nowhere in *Pennsylvania Fire* did the Court hold that registering to do business in a state or appointing an agent for service of process acts as consent to any suit of any kind in that state.  Instead, it merely concluded that defendants had consented to service of process in Missouri, resting largely on the fact that the state court had construed the Missouri statute to require such consent to suit for the service at issue. *Id.* at 95–96.

This case lacks what *Pennsylvania Fire* had: a clear statement from the state court construing the statute to require consent.  Gulf Coast does not identify any statute or agreement that requires foreign entities to expressly consent to any suit in Louisiana.  None of the forms that DCS filled out as part of its registration with the Secretary of State indicate that by registering DCS consented to suit.  None of the statutes covering registration informs a company that by registering it consents to suit. *See* La. Stat. Ann. § 12:1342 (admission requirements of foreign LLC); *id.* § 12:1347 (effect of certificate of authority); *id.* § 12:1350 (registered agent requirements).  The statute governing personal jurisdiction only purports to grant Louisiana courts

5

No. 17-30062

authority to exercise jurisdiction; it does not inform any foreign entities that by registering to do business that they consent to jurisdiction. *See id.* § 13:3201 (personal jurisdiction over nonresidents).

Gulf Coast tries, but fails, to identify a clear directive from a Louisiana court. Its argument hinges mostly on a single line from a single Louisiana Supreme Court decision addressing a different issue to establish consent. In *Phillips Petroleum Co. v. OKC Ltd. Partnership*, the Louisiana Supreme Court stated that that a "consequence of designating an agent for service of process is to subject the foreign corporation to jurisdiction in a Louisiana court." 634 So. 2d 1186, 1187 (La. 1994). That statement is a conclusion about personal jurisdiction, not a construction of its statutes that supports the theory that all foreign entities consent to any suit in the state. Without more, we cannot know whether the Louisiana Supreme Court based its conclusion on a consent theory or on some other outdated view of general jurisdiction.

Furthermore, that single line from *Phillips Petroleum* was completely incidental to the Louisiana Supreme Court's resolution of the case before it. The court was resolving whether a third party was required to appear and produce documents pursuant to a subpoena. *Id.* at 1187. It rejected the argument that being subject to personal jurisdiction was coextensive with the party's obligation to respond to a subpoena, and resolved the case on entirely different grounds. *Id.* at 1187–88. Subsequent opinions from Louisiana courts have explicitly warned against plucking that one line from *Phillips Petroleum* and wringing too much meaning from it. *See Taylor v. Arellano*, 928 So. 2d 55, 58 (La. Ct. App. 2005) (warning against a broad reading of *Phillips*

No. 17-30062

*Petroleum*).[1] It is hardly the sort of explicit directive discussed in *Pennsylvania Fire*.

Louisiana law, therefore, does not require a foreign entity to consent to jurisdiction as a condition of doing business in the state. The outcome of this case is accordingly controlled by *Wenche Siemer v. Learjet Acquisition Corp.*, which concluded that absent state law explicitly requiring consent, the court would not consider "appointment of an agent for process" to be "a waiver of [the] right to due process protection." 966 F.2d 179, 183 (5th Cir. 1992); *see also id.* (rejecting consent theory of jurisdiction because "[n]o Texas state court decision has held that this provisions acts as a consent to jurisdiction over a corporation in a case such as ours"). Even assuming arguendo that consent jurisdiction is a viable theory, personal jurisdiction over DCS would be improper under a consent theory of personal jurisdiction in this case.

## B. Specific Jurisdiction

Gulf Coast also argued that DCS had sufficient minimum contacts with Louisiana to be subject to specific jurisdiction. Gulf Coast asserts the Invoice Acknowledgment Agreement as its basis for concluding DCS has the requisite minimum contacts with Louisiana for specific jurisdiction.[2] But we conclude that DCS's contacts do not meet this threshold.

---

[1] Furthermore, a single sentence unrelated to the holding of that single case cannot be the basis for establishing the law in Louisiana's civil law system under the doctrine of jurisprudence constante. *See Chevron USA, Inc. v. Vermilion Par. Sch. Bd.*, 377 F.3d 459, 462 (5th Cir. 2004); *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 128 (La. 2000), *opinion corrected on reh'g*, 782 So. 2d 573 (La. 2001) (per curiam).

[2] In its reply, Gulf Coast appears to argue that DCS's registration to do business and appointment of an agent for process serve as contacts supporting specific jurisdiction. This argument appears to conflate specific and general jurisdiction, as Gulf Coast's claim is wholly unrelated to DCS's appointment of a registered agent and previous business in the state. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781–82 (2017) (noting that "unconnected activities" in a state does not justify specific jurisdiction over a claim unrelated to that conduct).

7

To establish that a defendant has minimum contacts with a forum, a plaintiff must "identify some act whereby it 'purposely avail[ed] itself of the privilege of conducting activities [there], thus invoking the benefits and protections of its laws.'" *Luv n' care*, 438 F.3d at 469–70 (alterations in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Only "contacts that the 'defendant *himself*' creates with the forum State" may serve as the basis for specific jurisdiction. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). As we have previously noted, "it is now well settled that an individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222–23 (5th Cir. 2012) (alteration in original) (quoting *Burger King*, 471 U.S. at 478). Instead, a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 223 (quoting *Burger King*, 471 U.S. at 479). A defendant who merely agrees to send payments to a state has not purposefully availed itself of the privilege of conducting business within that state or invoked the benefits and protections of that state's laws. *See Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983). Further, it is well established that

> the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.

*Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).

DCS's contacts with Louisiana are insufficient to subject it to specific jurisdiction in Louisiana. Only DCS's contacts with Louisiana and Gulf Coast, not Vinex's, may be considered. *See Walden*, 134 S. Ct. at 1122. DCS's mere sending of payment to Louisiana does not constitute purposeful availment to establish minimum contacts. *See Hydrokinetics*, 700 F.2d at 1029; *see also Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985) ("The agreement to mail payment checks into the forum state does not weigh heavily in the calculus of contacts."). Regardless, while the acknowledgment allowed DCS to deliver payment to Louisiana, it did not require it. DCS was permitted by the acknowledgment's terms to deliver payment to Texas with no interaction with Louisiana whatsoever. While DCS has paid invoices to Gulf Coast in Louisiana over the course of DCS and Gulf Coast's dealing, this dispute does not arise out of those invoices. Gulf Coast points out that DCS's contemplated future consequence of the acknowledgment was to ensure Vinex received funding from Gulf Coast, which was "a crucial part of [Vinex's] funding for payroll." But that benefit relates to Texas, where Vinex appears to reside, or Colorado, where the project was to be completed—*not* in Louisiana. *See Hydrokinetics*, 700 F.2d at 1029–30 (no personal jurisdiction in Texas where, although the goods would be manufactured in Texas, they would be delivered to Washington).

Gulf Coast attempts to analogize DCS's acknowledgment to the guaranty in *Marathon Metallic Building Co. v. Mountain Empire Construction Co.*, which was determined to be sufficient to confer specific jurisdiction. 653 F.2d 921 (5th Cir. Unit A Aug. 1981) (per curiam). In *Marathon*, a Texas corporation sued a Colorado resident in Texas after the obligations he had guaranteed went unperformed. 653 F.2d at 922. Specifically, the Colorado resident and another party had "executed an instrument by which they guaranteed, without

monetary limit and in broad terms, the payment of [the Colorado corporation]'s obligations to [the Texas corporation]." *Id.* Gulf Coast argues the acknowledgment agreement is effectively the same as this guaranty and, as such, the acknowledgment similarly confers specific jurisdiction. However, *Marathon* is distinguishable from the facts of this case in three key ways. First, the defendants in *Marathon* sent the guaranty on their own accord rather than in response to a request from the plaintiff, as was done here. Second, the contemplated result of the advancement of the guaranty in *Marathon* was to purchase and take title of merchandise in the forum state, whereas the purpose of DCS's acknowledgment was to generate funds for work in a different state (Colorado) from the forum (Louisiana). Third, the guarantors in *Marathon* actually agreed to be bound by specific terms rather than merely acknowledging that an invoice owed to a third party was valid and free of defenses, as here. Accordingly, *Marathon* does not support the existence of minimum contacts for specific jurisdiction here.

Thus, Gulf Coast failed to meet its burden of demonstrating a prima facie showing of DCS's minimum contacts with Louisiana.

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the judgment below.